Thursday, November 7th, 1816. The President pronounced the Court’s opinion, that the instructions, asked of the Superior Court by the Appellants, involved their right to the exclusive use of the water, used at the two Mills, in the Bill of Exceptions stated, during the term therein also mentioned ; and, as the question touching the said right depended on the testimony, stated in the Bill of Exceptions, as well as the Indenture, on which the action was grounded, it was not competent to the said Court to say whether the same was sufficient, or not, to warrant the conclusion, set up by the said Appellants in relation thereto ; unless the sufficiency thereof had been duly submitted to the judgment of the said Court by a demurrer to evidence ; and that, there is no error in the said judgment in declining to give the instruction asked as aforesaid : but the; Court is of opinion, that, while the Superior Court had justly; disclaimed passing an opinion upon the contract, for the reason; aforementioned, the instruction, actually given by it in relation to Winchester’s Mill, seems to be a departure from that principle,; and is liable to the objection, that it might have tended to limit1 the inquiries of the Jury to dams erected, or obstructions made, during the term staled in the said Bill of Exceptions, in exclusion of such, as might have been made anterior thereto ; and that the said Judgment is erroneous ; it is therefore reversed, the verdict set aside, and the cause remanded for a new trial,1 on which no such instruction is to be given.
Judge Coalter, differing, in some points, from the rest of the Court, delivered the following opinion.
The Bill of Exceptions in this case states that, on the trial, the plaintiffs offered in evidence a Deed, executed by Thornton and Dunbar the defendant, to the plaintiffs, dated the 3d of March, 1803, in which is recited an agreement entered into between them on the 16th of December, 1802, by which Thornton and Dunbar covenant to sell and convey to the plaintiffs an acre and a half of land, for a Mill seat, together with the necessary right of taking water by a canal, to be cut from the lower end of the forebay of Thornton and Dunbar’s Mill, called *212 the Fails Mills, amply sufficient for two overshot wheels, &c.s anti which canal was to be of sufficient width to contain water for five overshot wheels; provided that an ample quantity of water was to be left for the said Mills of Thornton and Dunbar. The deed then goes on to convey, with warranty, the land and water privileges according to the stipulations in that agreement. They also produced the Record of Spottsylvania County Court of their application for leave to erect their Mill. Their application was made on the 3d of May, 1803, to erect a Mill on their land, the water to be taken out of Thornton and Dunbar's dam on the Rappahannock River, the bed whereof belongs tothe Commonwealth. The order of Court in their favour was made in October, 1804. The Jury in their Inquest, and the Court in their Judgment, have reference to the Deed and Cove» naat between the parties, and state also, that the--teed'of the river, from Thornton and Dunbar's dam on which the water is to be taken, belongs to the Commonwealth, and the Mill is established agreeably to the terms and conditions of the Deed and Covenant.
It then states that the plaintiffs proved that, before the expiration of the three years mentioned in the Covenant, they built their Mill, and dug the canal, according to the agreement; and that, thereafter, until the 27th of September, 1806, they enjoyed a sufficient quantity of water! They also introduced a plat of the river, which the parties admit, and agree gives a true representation thereof, and proved, that the water used at the Forge Mills, Winchester's Mills, and the Falls Mills, all of which are represented on said plat, could not be used at their Mill, and that the Forge Mills had been erected long before the sale to them, and at that time and ever since, belonged to the defendant.
It appears from the plat, that there is an island in the river, called Mortimer's island, now the property of Winchester ; that the Forge Mill dam is erected across the river, above this island, from which a canal is taken, and which supplies water to what are called the Forge Mills, and several other Mills below, and returns the water into the channel on the north side of the island. That the water to work Winchester's Mill, which is- on the island, is taken out of the south channel, by a low dam above the dam of Thornton and Dunbar, mentioned in the *213 contract, which is also across the south channel, and discharges the water also into the north channel, so that it never returns to the dam of Thornton and Dunbar, from which the plaintiffs get water to their Mill.
The plaintiffs also introduced a deed from Thornton to Dun-bur, 1 presume, to show that the title is now in the latter.
They then gave in evidence the record of the proceedings in Winch sLr's application for leave to build his Mill. This application was made in December, 1799, and states that he is owner of land on one side of the river, the bed of which belongs to the Commonwealth ; that Thornton and Dunbar own the lands on the other side ; and he prays for an abutment against their land, &c. The Inquest is taken on the day of March, 1800, authorizing a dam of a certain height, &c. The Order for leave to build the Milt was entered in July. 1803, in conformity with a compromise between him and Thornton and Dunbar, to this effect : that Thornton ami Dunbar shall first have the quantity of water necessary for the Palis Mills ; and that the residue of the water, passing down the south fork, shall be equally divided, so that Winchester shall have one half thereof only, and Thornton and Dunbar the residue; they to have an abutment against Winchester’s island for their present dam, and Winchester to have an abutment against their land, on giving up the acre condemned by the Jury, and without paying the damages found : other matters in dispute between those parties about the water above the islaud not to be considered as yielded by either. All these documents are referred to, and made a part of the Dill of Exceptions, and of the Record.
The plaintiffs also gave in evidence the deposition of John Ward, which is admitted by the parties, and goes to prove the defect of waiter at the plaintiffs Mill during the time laid in the declaration, and that, if either the Forge Mill or Winchester’s Mili had stopped, there would have been water enough for a considerable portion of that lime.
The Bill of Exceptions then states, that the defendant proved that Winchester’s dam and Mill had been erected and used three or four years before the contract entered into, as aforesaid, between the plaintiffs and defendant, and that the plaintiffs knew it 5 and also introduced a witness, who swore that, during the *214 lime laid in the declaration, there mas not mater enough in the river to work the Falls Mills.
Whereupon the plaintiffs moved the Court to instruct the Jury that, if, upon the said evidence, they should be of opinion that, at any time within the period, laid in the declaration, the plaintiffs were deprived of a sufficient quantity of water for the use of their Mills, according to the terms and effect of the agreement, by reason of any diversion and use of the water by Winchester, then the defendant had broken his Covenant. The Court refused to give this instruction, but instructed the Jury that, if they shall be of opinion that at any time within that period the defendant committed any act, by which the plaintiffs were deprived of the use of water according to the terms and conditions of the contract, and by that act it was used at Winchester’s Mill, the said Covenant was broken.
The plaintiffs then moved the Court to instruct the Jury that, if they were deprived of water by the use of it by the defendant at the Forge Mills, it was a breach of the Covenant; which instruction the Court refused.
The Jury having found a verdict for the defendant, the plaintiffs appealed.
This case was argued before us as to what should be considered the sound construction of the contract; no doubt seeming to be entertained, by the counsel on either side, of the power of the Court to take into view as well the facts relative to the situation of the subject matter of the contract, as of the parties at the time it was entered into.
I believe there would be no great difference of opinion between the Judges as to the construction of the contract, provided it had been proper and competent for the party to call for such opinion by way of instruction to the Jury, instead of having that question presented for the consideration of the Court by a demurrer to evidence, special verdict, or case agreed. The propriety of the course taken is, therefore, first to be considered, and in which I have the misfortune to differ from the rest of my brethren.
So far as this case depends on the written documents and records, it would seem to me within the province of the Court to examine and decide on their legal effect; and that so far as the Bill of Exceptions, instead of setting out the parol evi *215 Úencc at large, states generally the weight of it, and that it proved so and so, I consider it as tantamount to, and in eífect, a case agreed, as to such facta so stated to he proved, (a.)
All the facts in this case, which are in the smallest degree explanatory of the situation of the subject matter of the contract, and of the knowledge of the plaintiffs of that situation, at the time it was entered into, are to he found iu the written documents, or in the facts so stated to he proved. The deposition, stated in the Bill of Exceptions, goes altogether to the actual want of water, and the probable loss occasioned thereby, and to the fact that if ike Forge or Winchester’s Mill had stopped, there mould have been water enough; on which latter point there is a contrariety of testimony, the defendant’s witness swearing that there was not water enough in the river for the Falls Mill; so that, had the instruction been given as asked, this point was still open to the Jury, who, (if they believed the defendant’s witness,) might, nevertheless, have found for him; and therefore the inslruction was asked hypothetically as to this point, and which is also reserved for the Jury alone, as well by the nature of the testimony, it having no relevancy to the point submitted, as by the manner in which it is mentioned ia the Bill of Exceptions.
But if there had been a contrariety as to the other facts, as, for instance, whether Winchester’s Mill and dam were in existence at the time of the contract, or whether that was known to the plaintiffs, still I think it would be competent to the parties, and that it is the constant practice, to apply to the Court to instruct the Jury that, if they shall be of opinion, from the evidence, that the fact is so and so, then they ought to find in a certain way. It would seem to me, that great inconvenience and injustice would result from the negative of these propositions. The parties cannot be compelled to agree a case, nor can a Jury he forced to find a special verdict; and in the very case before us, wherein there was a contrariety of evidence as to one point, which a Jury alone can weigh, a demurrer to evidence would have been improper, iu all such cases, the party would be deprived of the legal knowledge of the Court, and of his privilege to bring Ms case finally before this tribunal.
I cannot perceive how the case of the construction of a covenant, that is to say, what was the true meaning and inten *216 tioaof the parties thereby, can differ from other cases ; unless, indeed, it is said, that the facts, disclosing the situation of the subject matter of the contract, and of the parties, at the time it is entered into, cannot be considered by a Court, when deciding on the construction to be given; but that, in such case, the Jury alone can determine on the construction ; in other words, that what was the meaning and intention of the parties, in all such cases, is a matter of fact to be found by the Jury. According to this reasoning though, if the Jury in this case had found a special verdict, setting out all the written documents in the Bill of Exceptions, and all the other important facts in the case, this verdict ought to have been set aside, because the Jury did not find, as a fact, that the defendant did or did not intend by his contract, to warrant against Winchester’s use of, or right to use, the water: and hence it would follow, that this is a case, in which no special verdict could be found ; for the meaning and intention of the contract in this respect being the very point in controversy, and the only one, that could be reserved for the opinion of the Court, the finding of the Jury, as to this point, one way or the other, would amount, in effect, to a general verdict, leaving nothing for the Court to decide. So I might say of a case agreed; unless, indeed, the parties were to agree that the true construction of the Covenant was so and so ; (for, if that is a matter of fact, it must be either agreed or found;) and which, in this respect, would amount to a confession of judgment by the one party or the other. And, as to a demurrer to evidence, there could be none in this case, there being, as before stated, a contrariety of testimony as to ope important point.
For these reasons, and believing, from as careful an examination of the cases, as i have been capable of giving them, that there is no case in this Court, or elsewhere, in opposition to the doctrines, for which 1 contend, 1 am of opinion that the question whether, according to the true construction of this contract, the defendant intended to warrant against any use of the water by Winchester, which use might prove injurious to the plaintiffs, was properly propounded to the Court below for its opinion, and is now properly before us for decision, as well on the Covenant itself, as on the other facts above stated.
*217 I am also of opinion, that the Court below properly refused to give the instruction asked, being at present of opinion that the contract cannot be construed to bind the defendant to warrant, either that Winchester should make no use of the water, when such use would be injurious to the plaintiffs, or that lie should not use more, than he was authorized by the compromise and order of Court; the latter being a wrong, for which an action would lie against him; and the farthest I would go in this ease would be to say, that, if Winchester acquired by the compromise a right to use more water, than he had been in the habit of using at the time of the contract, so far as the plaintiff* sustained injury by such acquisition and greater use, the defendant should be responsible. Of this latter point, however, I have some doubt; and (among others) for the following reasons. When the plaintiffs purchased, they saw Winchester’s Mill and Dam in operation, and its effect upon the pond from which they were to draw their water; and no express Warranty is given against these effects; on the contrary, a large surplus of water, beyond what will suffice for the plaintiffs, seems to have been expected, even to the extent of three more overshot wheels: but, as to this point, mainly, for thi* reason; that, when the contract was made, the plaintiffs saw Winchester’s Mill in operation, and had a right to presume, and either did presume it was erected by leave of the Court, whose order it was their duty to inspect, if they had doubts of its effect upon the property they were about to purchase; or they knew the fact of the Us petukns as to this matter, the inquisition in which had been found before they purchased. Knowing Winchester's claim, as spread upon the record, to wit, that he was owner of lands on one side of a large river, the bed of which belonged to the Commonwealth; and that the Commonwealth had theretofore only granted a portion of its water, they were bound to notice the extent of Winchester's rights or equitable claim ou the Commonwealth. This, it would appear to me, was equal to one half of the whole water, provided his Mills would require that much, and provided that would not injure the Falls Mills theretofore established; and I would ask, If that case had been litigated throughout, and the Court h uJ finally decided to that extent in favour of Winchester, and it had appeared that such decision could dono injury to the Fails Mill, *218 whether such judgment ought to have been reversed ? Upon what principle could Thornton and Dunbar, owners of land on one side, have contended for greater rights, than the owner on the other,unless more than the half had been previously granted, as necessary to the Falls Mills ? Such then was the nature and probable extent of Winchester's clainj, known to the parties, and who nevertheless require no special Warranty against it; and had the case been litigated, and the Order of Court extended as far, as is above supposed, and that had been finally affirmed here, could the defendant be considered, as warranting against this ? The compromise, then, is, to my mind, clearly beneficial both to the plaintiffs and defendants, as well as to the quantity of water, as in the obtaining an abutment, for their dam against Winchester's Island; which it seems it before had not; (perhaps it was only a wing dam;) and which, I presume, may have been an important acquisition. I therefore doubt whether, if the compromise gave Winchester more water than he had been in the habit of using; yet, as it gave him much, less than he might, and probably would have acquired, if the contest had continued, the defendant ought to be answerable.
I forbear, however, to go at large into my opinion on this contract, in as much as I understand no instruction will be given, and, if the cause goes back, it may hereafter be presented to us in a different shape. Thus far I have thought it, perhaps, not improper to go for the satisfaction of the parties.
For these reasons, too, I think the instruction given was wrong; because it authorizes, in one event, a recovery for the diversion of the water by Winchester ; provided the defendant did any act occasioning such use within the time, laid in the declaration. By this 1 understand that, if the compromise had been entered into within that time, the plaintiffs might have recovered. But, surely, if the defendant after the contract, had diverted the water to another Mill, either of his own, or of a third person, and the injurious effects of which had not been felt until within the time laid, it would have been a breach Under the present declaration; for the continuance of the dam during that time, though not then built, would be, as to the water diverted thereby, a new act of diversion within the time. But this, I apprehend, was not the understanding of the in *219 struetion given: it was, however, calculated to mislead the Jury, and, on that account also, wrong.
I think, also, that the Court was correct in refusing the Hast instruction asked for.