# CHARLESTON.

WHITE v. L. HOSTER BREWING CO.

Submitted January 20, 1902.    Decided March 22, 1902.

1. CIRCUIT COURT—*Discretion—Verdicts—New Trial.*
   The circuit court has a wide discretion in setting aside ver-
   dicts obtained in the absence of either party to the suit in the
   interest of a fair hearing on the merits, and such discretion
   will not be interfered with by this Court unless the ends of
   justice will be promoted thereby. (p. 262).

2. INSTRUCTIONS—*Evidence—Reversible Error.*
   The circuit court commits no reversible error in instructing
   a jury to find for a party in whose favor the evidence plainly
   and decidedly preponderates. (p. 263).

3. INSTRUCTIONS—*Conflicting Evidence.*
   If the material facts are doubtful and a verdict for either
   party would be sustained, the circuit court should not instruct
   the jury to find against such party. (p. 263).

Error to Circuit Court, Mercer County.

Action by E. E. White, administrator, against the L. Hoster
Brewing Company. Judgment for defendant, and plaintiff
brings error.

*Affirmed.*

J. W. HALE, for plaintiff in error.

J. M. McGRATH and H. A. RITZ, for defendant in error.

DENT, PRESIDENT:

E. E. White, administrator of J. W. White, deceased, com-
plains of a judgment of the circuit court of Mercer County
against him in a certain suit at law wherein he was plaintiff and
the L. Hoster Brewing Company was defendant.

The controversy was over a three hundred and fifty dollar
check found among the papers and payable decedent as sheriff
of said county, and given by the defendant subject to a credit of
one hundred dollars endorsed thereon.

There are but two grounds of error relied on, to-wit: *First,*
The setting aside of the verdict of the jury found in the absence
of the defendant's agent, G. W. Atkinson. *Second,* The in-

struction of the jury to find in favor of the defendant. The
motion to set aside the verdict was made but a short time after
it was entered.   Mr. Atkinson, who was the agent of the plain-
tiff, lived twelve miles from the court house at Bluefield.   He
started to court between eight and nine o'clock, but by reason
of two accidents to his vehicle on the way, he was so detained
that he did not arrive until between eleven and twelve, at which
time the case had been called and the verdict had just been
returned at the time of his arrival.   He immediately moved to
set it aside, and on his showing as to the cause of his detention,
the court set it aside and granted a new trial, which was had
without delay, resulting in a judgment for the defendant.   In
granting new trials the circuit court has a wide discretion, and
unless it plainly errs, this Court will not disturb its ruling,
especially if such ruling tends to secure justice by a fair hearing
and trial on the merits, and no considerable delay is occasioned
thereby.   It is the duty of the court to promote the ends of
justice, and not permit one of the parties to retain an unjust
advantage obtained by reason of an unforseen and unexpected
accident to the other.   Under the circumstances of this case
the court's action in affording the defendant an opportunity to
present its defence was eminently proper and justified by the
result that followed.   Men should seek justice and peace rather
than injustice and litigation.   They should not attempt to take
advantage of each other's misfortunes to compel them to pay
money that justly they are not liable for if the truth can be made
evident.   In such cases the courts relieve against misfortune,
accident and the unfairness of the opposing party.   *Simpkins
v. White,* 43 W. Va. 200.

On the trial of the case, which immediately proceeded, the
defendant showed by the evidence of its agent G. W. Atkinson
that the three hundred and fifty dollar check in controversy and
which was found in a small book usually carried by J. W.
White, deceased, in his pocket, was given on the 28th of April,
1899, to pay the license tax for the succeeding year, with the
understanding that it was not to be deposited for a few days;
that he afterwards paid one hundred dollars cash on it and then
on May 6, 1899, gave a check for the two hundred and fifty dol-
lars balance, which later check is produced here for inspection;
that decedent told him that he had not the three hundred and
fifty dollar check with him, but would deliver it up to him; that

he asked decedent for it several times, but he always told him that he forgot it. In this statement he is corroborated by the checks and other witnesses, also by the most potent fact that decedent never presented the disputed check to the bank for payment even up to the day of his death, more than a year from the date thereof, although he received other checks from the defendant in the mean time and cashed them. The plaintiff by the appearance of the two hundred and fifty dollar check and some alleged statements made by the witness Atkinson attempts to cast some doubts on the truth of his evidence. In so far as the check is concerned, if it is not genuine or has been tampered with, the officers of the bank on whom it was given by whom it was paid, could have easily established this fact. Their non-production as to so serious a question must put it at rest, for it must be presumed that their evidence would have sustained the check, or they would have been produced *Union Trust Co.* v. *McClelland,* 40 W. Va. 405 (21 S. E. 1025). The few contradictory statements alleged are not sufficient in importance to materially affect the decided preponderance of the evidence, circumstantial and oral, which is undoubtedly in favor of the defendant. On the strength thereof, the court instructed the jury "That the evidence in this case cannot warrant a verdict for the plaintiff, and they are therefore instructed to find for the defendant." There is no question but that if a verdict had been returned on the evidence, it would have been the duty of the court to set it aside, because opposed to the plain and decided preponderance of the evidence. Although the rule prevails in the United States courts and in a majority of state courts that in such a case a verdict should be directed when asked, it has not heretofore been adopted in this State. 6 En. Plead. & Pract., 679. The leaning of the early courts of Virginia has been towards the "scintilla of evidence" rule, although in following it, repeated verdicts may have to be set aside as contrary to the decided weight and plain preponderance of the evidence. *Keel* v. *Herbert,* 1 Wash. 203; *Hollingsworth* v. *Dunbar,* 5 Munf. 199; *Fisher* v. *Duncan,* 1 Hen. & Munf. 363; *Marlin* v. *Stover,* 2 Call 513. The question is now presented whether this Court should follow the development of the law slowly crystalizing around the majority rule, sustained as it is by reason or justice, or still cling to the antiquated theories of the minority rule through fear of invading the province of the jury. Shall the

circuit .court in a plain case be compelled to sit still and permit a jury to bring in a verdict contrary to the plain and decided preponderance of the evidence, and then set it aside and be compelled to repeat the farce of a trial? Or shall the circuit court follow the settled practice of the courts of the United States and direct a verdict against the party in whose favor the evidence does not warrant a verdict? "The practice is a wise one. It saves time and costs; it gives the certainty of applied science to the results of judicial investigation; it draws clearly the line which separates the province of the judge and jury and fixes where it belongs the responsibility which should be assumed by the court." *Merchant's Nat. Bank* v. *State Nat. Bank,* 10 Wall. 604; *Schuyler* v. *Munson,* 14. Wall. 442.

The court should never interfere in doubtful cases of fact, dependent on the credibility of witnesses and where it would not be justified in setting aside the verdict, it matters not which way may be the finding. But where the law sustained by a plain preponderance of evidence, about which two reasonable minds could not differ, is in favor of either side, the court should not hesitate to direct a finding, for thereby justice is promoted, a useless controversy brought to an end, and time, costs and fruitless labor saved to the litigants, the court and the public. See *Ketterman* v. *Railroad Co.,* 48 W. Va. 606, where this question is fully discussed by JUDGE BRANNON. In the case under consideration, the only evidence in favor of the plaintiff was a bank check for three hundred and fifty dollars more than a year past due, having endorsed thereon a credit of one hundred dollars, found among the papers of the decedent, making a *prima facie* case of two hundred and fifty dollars due the plaintiff. It is a very weak case, however, for the very fact that the check was not presented for payment tends to show that there was something wrong with it as a check. The defendant on the other hand shows why it was given, why it was withheld from payment, and how it was paid a few days thereafter by another check, which was presented for payment and paid, and is produced as evidence. The plaintiff raises objections to this check because its appearance shows that it has been tampered with by some one. If any material alteration in the check has been made since its payment either as to its date, date of payment, or purpose as written thereon, the records and officers of the bank could if produced, have sustained the same. The appearance

of the check itself can prove nothing of the kind, but it must be accepted in all its parts as genuine until disproved by competent evidence. Taken by itself it is sufficient to overcome plaintiff's *prima facie* case. In addition defendant explains why the check was not taken up, but left in the hands of decedent and fully throws the fault therefor on decedent by sufficient and competent evidence. It is true that two witnesses are introduced who contradict defendant's witness Atkinson as to certain statements made by him. Admitting, however, that he made such statements, which he denies, merely claiming that the witness misunderstood him, they are wholly insufficient to impeach his credibility or change the plain preponderance of the evidence. Upon the spur of the moment and without investigation and a refreshing of the memory from documentary evidence, any witness is liable to make such mistakes, as human memory is a frail dependence as to transactions long past. And when it is memory against memory as evidence it is made weaker. Disregarding all the oral testimony and considering the checks and the undisputed circumstances alone, the case is for the defendant, the oral testimony, allowing the contradictions to be true, strengthens the defence. Then what was there to submit to the finding of the jury? Simply a few matters of suspicion and contradiction, which might mislead the jury into finding a wrong verdict, and thus put the court to the trouble of setting it aside and awarding a new trial.

If in any possible view of the evidence a verdict would be sustained in favor of the plaintiff, the court may not instruct in favor of the defendant, although the seeming preponderance of the evidence is with him. It is not the mere preponderance of the evidence that justifies the instruction, but it is only when the preponderance is so plain that a verdict in opposition thereto ought not to be permitted to stand. Such was this case, and now this Court is asked to reverse the action of the circuit court and remand the case for a new trial for the reason that the plaintiff might be able to obtain a verdict from the jury even though the court would be compelled to set it aside. That he is entitled to a jury trial, although the law as applied to the facts will not permit a verdict in his favor to stand.

In the case of *Pleasants* v. *Faut,* 22 Wall 116, it is held: "If the court is satisfied that, conceding all the inferences which the jury could justifiably draw from the testimony, the evidence

is insufficient to warrant a verdict for the plaintiff, the court should say so to the jury. In the case of *Levilzty* v. *Canning,* 33 Cal. 299, it is held that "where there is an issue of fact to be determined by the jury, it is error to direct a verdict. But it is immaterial error when any other verdict would have been contrary to the evidence." The position of the United States court is undoubtedly the more rational in holding that such direction is not error rather than to hold it error, but immaterial or harmless. The effect is really the same. It is better to decide a proposition direct than it is to avoid it and reach the same conclusion. To say you are entitled to a trial by a jury, and yet because the jury should have found against you, you were deprived of it erroneously and yet rightfully because harmless, is a contradiction within itself. It would be folly on the part of this Court to reverse a case and remand it for a new trial where if the jury should find against its former verdict, though directed by the lower court, it would be the duty of this Court to set aside such verdict as contrary to the plain preponderance of the evidence. This would be administering litigiousness rather than justice. Therefore the court must choose between the delemma of determining the action of the circuit court in granting the instruction complained of as either harmless error or law. For it would not be right to send this case back and put the parties to the expense and farce of a new trial, when it is apparent that a just conclusion has already been reached.

It is preferable and in accord with both reason and authority to sustain the action of the circuit court as in harmony with law. In either event the judgment must be affirmed.

*Affirmed.*