# CHARLESTON.

## W. W. COLVIN *v.* J. K. SMITH.

### Submitted October 23, 1923.  Decided October 30, 1923.

1. NOTES—*Fraudulent Misrepresentations Averred as Inducement to Execute a Note Must be Clearly Proven in Defense of Payment.*

   Where the maker of a note as a defense to its payment avers that the payee induced him to execute the same by fraudulent representations the evidence of such fraudulent representations on the part of the payee must be clearly proven. (p. 751).

2. INSTRUCTIONS—*Where Verdict for Defendant Would Have to be Set Aside for Insufficiency of Evidence it is Not Error to Instruct a Verdict for Plaintiff.*

   Where in an action on such note the evidence of such fraud is so weak that a verdict for defendant would be instantly set aside, it is not error to instruct a verdict for plaintiff. (p. 751).

Error to Circuit Court, McDowell County. Action by W. W. Colvin against James K. Smith. Judgment for W. W. Colvin, and James K. Smith prosecutes this writ of error.

*Affirmed.*

*James K. Smith* and *Harman & Harman,* for plaintiff in error.

*Parlow & Christie,* for defendant in error.

LIVELY, JUDGE:

Defendant Smith prosecutes this writ to a judgment against him on a directed verdict for $139.84, the amount of a promissory note executed by him to plaintiff below.

There is little conflict in the material facts. On December 15, 1921, Colvin sold and delivered to William Turner a bake oven, which sale was evidenced by a writing in which the title was reserved to the vendor until the purchase price of $200 was paid. This writing was not recorded. Smith, the defendant, furnished money to Turner to move the oven from Landgraff to Keystone, where it was set up in a room belonging to Mrs. McCray, by Colvin, acting for Turner.

The business was not successful, and Smith, in order to help
Turner, who, he said, had been recommended to him as an
honest man by Colvin and by the Empire Coal and Coke
Company, went with Turner to Graham Grocery Company
and helped him to procure flour, sugar and other necessary
articles to the amount of $124, which he, Smith, directed to be
charged to him and Turner. Smith becoming dissatisfied
with Turner's conduct in the use of intoxicants and inatten-
tion to business, made some arrangement with Turner by
which he, Smith, should have possession of the bake oven
until the grocery debt was paid. However, Turner continued
to operate the oven in the McCray house, and Smith exercised
no control thereof. Turner had paid no rent, and suddenly
left for parts unknown. Colvin ascertained that Smith was
attempting to exercise some control over the oven, or pos-
sibly offering it for sale, and advised Smith of his reserva-
tion of title. Each one agreed that he had lost money on
the defaulting negro; and it was agreed between them that
Smith would take the oven as his own and execute a note,
which he did, to Colvin, at four months, for $138. The note
for $138 was arrived at in this way: Colvin had lost $200 and
Smith was surety for $124 which he was bound to pay, and
Colvin agreed that Smith should only lose one-half of that
amount, namely, $62, which taken from the $200 purchase
price left the amount of the note $138. This note is dated
February 20, 1922, and is for value received and for "bake
oven and outfit," and is at four months. Smith removed the
property from the McCray house to premises of his own and
proceeded to operate it. When the note became due he re-
fused to pay it, and on July 15, 1922, wrote Colvin the fol-
lowing letter:

> "To Hon. W. W. Colvin,
>     Landgraft, W. Va.
> Dear Sir:
>     I given you a note 4 months ago for $138 for a bake
> oven outfit. You promised to give me time on the
> note if I was not able to pay in 4 months. I have told
> you my condition, that Turner left me with something
> I did not know how to handle, nor I could not find
> any one. You come to me for the debt. I told you

to go sell the oven for the best price you could get, that I was bit. The baker was out of my line of business. I don't know what to tell any one about the oven. Your wife she has been doning me and you have, too, after I tell you I am not able to pay at present. I am forced to recall the note for I give you a note for a bake oven that belonged to me. This is a fact. I have consulted the best lawyers in the state, and I am willing to pay you still if the law says it is just for me to pay a man for something that belongs to him by purchase and contract. W. M. Turner come to me well recommended to me by you and others the Empire C. C. & Co. and you have help put me in this condition by recommending Turner. I must say in short I am willing to trust a jury of 12 men to say who is right.

Yours as ever but grieved,

James K. Smith.''

It appears, however, that about the time the note became due or after it had become due and before this letter was written, Smith attempted to pay the note by selling to Colvin an automobile which he priced at $600; Colvin offered him about $450, which was to be paid by including the $138 note, but this settlement was not made, and this suit followed. The only defense interposed by Smith was that he had been induced to execute the note by fraud and misrepresentation upon the part of Colvin. As a basis of the allegation of fraud he asserts that Colvin informed him at the time the note was given that he had a lien upon the oven by virtue of his reservation of title until the purchase price of $200 was paid and that he was under the impression from what Colvin said that this reservation of title had been recorded so as to make it valid against subsequent creditors, and purchasers for value, without notice. The evidence as to this fact is far from being clear and convincing. Colvin says that no such representation was made; and when pressed in cross examination Smith does not say Colvin told him the contract was recorded. He says, ''It strikes my memory he did.'' ''Q. He didn't tell you it was recorded? A. Not exactly. He asked me if I had examined the records and when I come and examined the records, I found he hadn't recorded it.'' Defendant is an at-

torney-at-law.   It will be observed that Smith never made
this claim until after he had taken possession of the oven and
the operation thereof was unfruitful.  He does not even
mention it in his letter written a short time before the suit
was instituted.   Prior to that time he had made an effort to
pay the note in the proposed automobile transaction.

We do not think the evidence sustains the allegation of
fraud.   The circumstances surrounding the execution of the
note and the subsequent occurrences militate against the
validity of any such defense, and creates the impression that
it was a subterfuge.   Its assertion was long delayed.   Fraud
is never presumed, and where it is alleged the facts sustaining
it must be clearly made out.   *Wood* v. *Harmison,* 41 W. Va.
376.   It is well settled that neither in law nor equity will any
relief be granted from alleged fraud unless the allegations
be clearly and distinctly proven.   *Whittaker* v. *Improvement
Co.,* 34 W. Va. 217.   It is regarded as a rule of universal recog-
nition that, except in particular cases, he who alleges fraud
must clearly and distinctly prove it either by circumstantial
or direct evidence.  "The law does not presume fraud, but
on the contrary the presumption is always in favor of inno-
cence and not of guilt, and unless the allegations are proven,
relief will be denied, although it may appear that the de-
fendant has not been perfectly clear in his dealings."   Vol.
6 Encyc. Dig. Va. & W. Va. Rep. p. 502 and numerous cases
there cited.

On this evidence, was it error for the trial court to direct
a verdict for plaintiff?   If there had been a verdict for de-
fendant it would have been the plain duty of the court to
immediately set it aside.   And where it appears that a ver-
dict could not be allowed to stand except for the plaintiff it
is the duty of the court to so instruct, and end litigation.
"Where the law, sustained by a plain preponderance of the
evidence, of which two reasonable minds could not differ, is
in favor of either side, the court should not hesitate to direct
a finding, for thereby justice is promoted, and useless con-

troversy brought to an end, and time, costs, and fruitless labor saved to the litigants, the court and the public.'' *White v. Hoster Brewing Co.*, 51 W. Va. 259.

The judgment is affirmed.

*Affirmed.*