CHESSIE ACREE *v.* THE EUREKA PIPE LINE COMPANY

(No. 8985)

Submitted February 20, 1940. Decided March 26, 1940.

*Grover F. Hedges* and *S. P. Bell,* for plaintiff in error.
*Anthony F. McCue, Kemble White* and *H. M. Garrett,* for defendant in error.

RILEY, PRESIDENT:

The plaintiff, Chessie Acree, brought this action in trespass on the case against the defendant, The Eureka Pipe Line Company, to recover damages for injuries alleged to have been received by her about 7:30 P. M., on September 25, 1937, by falling into a hole, commonly called a bell hole, which had been dug by the defendant for the purpose of repairing a leak in its oil line. Error is prosecuted to the judgment of the circuit court of Calhoun County entered upon a verdict in defendant's favor rendered at the close of all the evidence at the direction of the court.

The record discloses that plaintiff actually was injured on the evening of the day in question somewhere between her home in Roane County and the pump station at Richardson, in Calhoun County. She and her husband were, at the time, on their way to the post office at Richardson. In going to Richardson, the Acrees, and others living in the same vicinity, usually followed a well-beaten path down Axpalent Run to the West Fork of the Little Kanawha River—dividing line between Roane and Calhoun Counties; thence over West Fork at a point where the Hope Natural Gas Company's pipe lines crossed the same, using either the pipe lines or the rocks and cement blocks which had been placed in the stream just above, and for

the protection of, the pipe lines; thence over a strip of bottom land to the county road, which paralleled the river. The defendant's oil line, over which the bell hole had been dug, lay between the river and the road, being parallel thereto.

There is also testimony to the effect that when a horse was used, the crossing was made at a point some 46 feet down below the Hope's pipe lines, and when the water was too high for either horse or foot travel, the crossing was made by boat approximately 200 feet upstream from the pipe line. Whether the crossing was made by boat or on foot, the paths leading from the river converged at or near a point where the bell hole had been dug and across the defendant's oil line onto the county road. In fact, a disinterested witness, a mail carrier, whose testimony does not seem to have been materially contradicted, testified that when he crossed the river by boat in the course of his routine duties and continued on toward Richardson, he invariably passed the place where the bell hole was dug.

The defendant in 1906 obtained a right of way for and laid a pipe line thereon, which, at the point where it was crossed by the path, was buried to a depth of about five feet.

Plaintiff claims a right of way over and across the defendant's pipe line both by prescription from user extending over a period of many years as well as by private grant. Undoubtedly, she, as well as many other persons, used this pathway for long periods of time. In fact, she testified that she was thirty-one years of age and had travelled this pathway for twenty years. There was introduced into the record an agreement dated August 14, 1924, between plaintiff's mother and stepfather, one Haney, and parties named Langford, which provided for a right of way down Axpalent Run to the Hope lines, but plaintiff claims one C. R. Meadows, the owner of the strip lying between the river and the county road, gave plaintiff's stepfather by written agreement, also dated August 14, 1924, a private grant over the land from the river to the

county road. A canceled check of the same date as the agreement, signed by Haney and payable to and endorsed by Meadows, was introduced. Plaintiff claimed this check represented the consideration for the grant of the claimed right of way on the Calhoun side of the river. She introduced evidence to the effect that after the agreement was made with Meadows, the latter had obtained possession of the paper claimed to show the Calhoun County grant and destroyed it. On the other hand, Meadows testified that the paper was destroyed by plaintiff's mother. Be that as it may, we think the plaintiff was not a mere trespasser, as claimed by defendant. She and her husband, as well as others, had been permitted to pursue the pathway from the river to the county road over a period of many years. The evidence as to a right of way is sufficiently strong that it presents a question for the jury. True, defendant's grant from Meadows' predecessor in title dated from 1906, but at most it was a grant for a pipe line under the surface and when made and the pipe line constructed, the pathway, according to the evidence, had already been well defined, and defendant company knew, or should have known, of its user by the many persons who travelled either on foot or by boat from the Roane County side of the river to where the Hope lines crossed to the county road.

The hole in question had been dug in July, 1937. It was about five feet beneath the surface of the ground and at the top was substantially five feet square. Notwithstanding it was opened in the line of the pathway over which plaintiff was proceeding, it was allowed to remain open and substantially unprotected, except for earth piled around it, until after plaintiff had been injured. Under these circumstances, we are prone to view the evidence bearing on defendant's negligence in plaintiff's favor. This credence alone would present a jury question.

Assuming, however, that plaintiff was rightfully on the premises and that defendant company was guilty of actionable negligence in digging and maintenance of the bell hole, can we say that the trial court erred in directing

a verdict in defendant's favor?  The answer to this question requires a determination whether or not, under all the facts and circumstances of this case, the Acrees' version as to how the injuries were incurred will bear the test of the rule that "Courts are not required to believe that which is contrary to human experience and the laws of nature, or which they judicially know to be incredible * * *".  *Owen* v. *Appalachian Power Co.*, 78 W. Va. 596, 610, 89 S. E. 262, 268.  The rule generally prevails in this state that a court will not allow a jury to find a verdict in favor of a party, or if one is found will not allow it to stand, where the evidence offered to support it lacks plausibility and is incredible.  *Marshall* v. *Conrad, Admr.*, 118 W. Va. 321, 327, 191 S. E. 553.

Let us now consider the record again to see if it is sufficient to sustain a finding by a jury of what plaintiff contends actually occurred in the vicinity of the bell hole, when she was injured.  In this regard, the condition of the soil around and in the hole, the depth and size of the hole, and the condition of plaintiff's body and clothes immediately after she received the injuries become most important and bear heavily upon the issue of the credibility of plaintiff's story.

Mr. and Mrs. Acree both testified that on the evening in question they crossed the river at the Hope lines; that plaintiff preceded her husband at a distance of about fifteen feet up the river bank and toward the county road; and that though on various occasions she had attended church and visited the grocery store and post office at Richardson, she had no knowledge of the bell hole and had not passed along the pathway since June.  Mr. Acree, who worked at the Hope's pump station, had crossed the river at the same place twice a day for twenty-two days in August and ten days in September, 1937, yet he forgot to warn plaintiff of the hole which lay in their path. Plaintiff's testimony as to lack of knowledge of the hole does not go without very substantial contradiction.  In fact, Carl Kemner, the store-keeper at Richardson, whose wife was the postmistress there, testified that during

August and September, 1937, both the Acrees, together and separately, visited the store and post office "quite a few times," and there is nothing in this case which would in the least reflect upon this witness's testimony.

Icy Rader and Roy Blosser both testified that they had been at and past the hole with the plaintiff. The former stated that on one occasion plaintiff said, "Let's fall in and make ourselves some money." Blosser testified that at various times he had accompanied plaintiff along the pathway and passed the hole. The credibility of these witnesses is open to question. In any event, the testimony of Kemner, Rader and Blosser, standing by itself would not have merited the action of the trial court in directing a verdict in defendant's favor, but, there is another element in this case which must be considered. The evidence clearly indicates that on all sides of the hole dirt was piled to a substantial height. There is substantial evidence that the hole and the ground around it were saturated with oil from the leak which prompted the defendant company to dig the hole in the first instance. The hole itself was five feet square at the top and five feet, one inch deep. At the bottom of it was a four-inch pipe line with two U-bolts around the pipe line making four bolt ends protruding approximately three inches above the pipe. Plaintiff herself testified that the night was damp. With these conditions in mind let us now consider Mr. Acree's testimony. He said that he lost sight of his wife and, turning the flash light down in the hole, he found her lying at the bottom, "crumpled down in there." Notwithstanding she weighed one hundred and eighty pounds, he testified that he reached down in the hole, pulled her up while she was unconscious, and carried her to the pump station, where he laid her on the floor. Disinterested witnesses who came to the pump station to assist testified that her clothing was not dirty, and Dr. Depue, a witness for plaintiff, who was called to treat her, testified that he saw no dirt on her clothes except on her left sleeve. One H. C. Parrell testified that Acree

sent him back from the pump station to the hole to get plaintiff's pocketbook. There he found the pocketbook lying in the hole; that no dirt was on it and the ground in the bottom of the hole was undisturbed by footprints or other evidences of a struggle, except the footprints made by the witness himself. The testimony in support of the Acrees' statement concerning how the injuries were incurred is so weak that, considered with the improbability of plaintiff's lack of knowledge of the existence of the hole, it is indeed hard to believe.

In the decision of this case it is unnecessary for us to say that we do or do not believe plaintiff's version of the case. It is well settled in this state that where the evidence plainly and decidedly predominates in favor of a party, it is not error for a trial court in a law action to give a peremptory instruction in that party's favor. *White v. L. Hoster Brewing Co.,* 51 W. Va. 259, 41 S. E. 180; *Bank of White Sulphur Springs* v. *Lynch,* 93 W. Va. 382, 388, 116 S. E. 685. It seems to us that the instant record presents such a case, and that the trial court committed no reversible error in directing a verdict in defendant's favor.

For the foregoing reasons the judgment of the circuit court is affirmed.

*Affirmed.*