ELLEN ROSE STEWART, *Administratrix, v.* MATTHEW F. PHILLIPS, *doing business, etc., et al.*

(No. 9328)

Submitted September 2, 1942. Decided October 13, 1942.

*Aaron L. Lincoff* and *Pinsky & Mahan,* for plaintiff in error.

*A. E. Bryant, J. W. Cummins, T. F. Mckenzie* and *W. J. Moore,* for defendants in error.

KENNA, JUDGE:

In this proceeding to recover for death by wrongful act, the Circuit Court of Hancock County, at the conclusion of the testimony, directed a verdict for the defendants, and to a judgment based thereon and in favor of Matthew F. Phillips and Delbert Harris, the plaintiff Ellen Rose Stewart, administratrix of the estate of Edwin Ferrell Stewart, assigns error. The assignments present the broad single question of whether the plaintiff's allegations and proof, considered most favorably, are sufficient to establish that the negligence of the defendants, or of either of them, was the proximate cause of the death of the plaintiff's decedent, the collision between the vehicle owned and operated by Phillips and driven by Harris, and that of decedent having occurred in the late afternoon of January 12, 1941, on Route Two, east of New Cumberland and between that place and Chester, near a point where what is locally known as the Lohr service station situated on the outside of a gradual curve is just north of the highway. The death of plaintiff's decedent resulted instantly from a broken neck.

Apparently there were no eye witnesses to the actual impact, save the decedent and the defendant Harris, the latter being the only witness produced by the defendants. The proprietor of the filling station and his son were the only other witnesses who testified concerning the actual occurrence. A plat, the accuracy of which is un-

questioned, representing the highway and its immediate vicinity two hundred and fifty feet east and west of the point where decedent's car was found, along with several photographs of both vehicles taken after the accident, was also introduced on behalf of the plaintiff.

Highway number Two was covered by snow with the exception of two wheel lanes, and these were icy and slippery, as was the entire road. Apparently, no cinders had been spread on it that day. At the scene of the accident, the hard surface was eighteen feet wide, with a twenty-five foot berm on both sides. There was a gradual curve with its outside to the north, the outside being what may be roughly averaged as fifteen inches higher than the south edge of the hard surface, thus banking the curve. The Lohr service station was operated from a building estimated to stand fifty feet north of the hard surface with a post supporting an Esso sign between it and the highway, and about fifteen feet from its edge. Several hundred feet from the point where the cars collided, in the direction from which defendants' truck was approaching, there was at the north of the highway facing east a sign erected by the State Road Commission, reading "Winding Road".

The defendant Phillips was engaged in the trucking business in New Cumberland, and the truck, with trailer involved, had delivered a shovel at Chester and was returning unloaded. The truck weighed in the neighborhood of seventy-six hundred pounds, and the trailer around fifty-six hundred, the latter having but one axle, its forward end being connected with the rear of the truck by a pivot. The trailer's axle was supported by two dual wheels, four in all, on each side, there being conflicting testimony concerning the condition of the tires at the time of the accident. The trailer's length was twenty-two feet, its width ninety inches.

The plaintiff's decedent was driving what is referred to as a 1935 model Ford two-door sedan east toward Weirton where he was employed in a steel plant. There is a question concerning its dimensions which we do not consider consequential.

The testimony of Harvey K. Lohr, offered by the plaintiff, is to the effect that he was in the building of his service station standing at the window and that he noticed the defendants' tractor-trailer on the highway to the east going toward New Cumberland at a speed of about forty miles an hour, observing its speed for a distance of approximately fifty-six feet, after which he turned from the window. Hearing a crash a moment later, he looked out the window, observed the wreck and went to it at once. He observed the Ford "hanging over fast to the trailer", saw it "break loose" and slide over the embankment on the south side of the highway. This witness states that when he observed the trailer after the accident, its back end was to the south, or its left, side of the double markers on the highway. He, on cross-examination, was confronted by a directly contradictory statement contained in a paper signed by him two days after the accident to the effect that he was not looking out of the window before the collision. We do not think that we are here concerned with the credibility of this witness nor with the plausibility of the explanation he made of his conflicting statements.

Harry J. Lohr, son of the proprietor, age thirty-five years, testified generally to the same facts as his father, with the exception that he did not see either vehicle before the collision. He left the building as soon as the crash attracted his attention, reached the decedent's car before it went over the embankment right side up on its own side of the road, and observed that the trailer had come to a stop with its left wheels south of the center line, or to its left.

Delbert S. Harris, driver of the Phillips trailer-truck, stated that he was twenty-three years old, had had about one year and a half experience driving trucks for the defendant Phillips, and that on the afternoon in question, he was returning from Chester on a slippery road with the truck in third gear, which, for all practical purposes, is the same as second gear on the usual passenger car, its maximum speed in that gear being twenty-two miles

an hour. Harris testifies that he was proceeding carefully at a moderate speed, keeping well to the right and that as he approached the Lohr service station, he slowed down to a speed of not more than fifteen miles due to a car that was leaving there in his same direction about two hundred feet ahead. · He saw the Stewart car approaching "fairly fast", and close to the center line and pulled farther to his right. As Stewart's car passed the car in front of Harris, "it hit some ice or something" that caused its rear to swing to its right, leave the hard surface and "hit" the berm on the south, it then being pointed almost directly north, or at right angles to the highway's directions. The rear wheels of the Ford evidently caught sufficiently · to bring it back on the highway diagonally toward Harris' "outfit", because it did come in contact with the trailer at its extreme left rear end, Harris stating that it caused his cab to "jack knife around" to the right.

The only mark on the trailer was on a heavy steel beam or truss supporting its floor back of its wheels, and quite near its end.

The condition of the car that decedent was driving, according to the testimony and photographs introduced, shows that it was struck on its left side immediately back of its hood or cowl, above its left running board and left rear wheel, both the running board and left rear wheel remaining undamaged. The body of the Ford on its left side was practically demolished, its right door also being noticeably sprung out of line. The forward part of the Ford, radiator, lights, fenders, wheels, bumper and hood were to all intents and purposes uninjured, making it appear practically certain that it was either "sideswiped" by the trailer, or that it so altered its own direction that it "sideswiped" the trailer.

Viewing all of. the direct testimony and inferences fairly to be drawn therefrom most favorably in the light of the contentions advanced by the plaintiff, we have been unable to arrive at an act of negligence committed by the defendants which could be regarded as the proximate cause of decedent's tragic death which is not so

plainly outweighed by the testimony of the witness Harris that a verdict for the plaintiff would stand against a motion to set it aside. Under the well recognized rule in West Virginia, in that situation the trial court properly directed a verdict for the defendants. *Barr* v. *Knotts,* 101 W. Va. 440, 133 S. E. 114; *Acre* v. *The Eureka Pipe Line Co.,* 122 W. Va. 242, 8 S. E. 2d 186.

It may be conceded that under the proof and testimony the jury might have been warranted in reaching the conclusion that the defendants' truck-trailer at the moment of impact was making a speed of forty miles an hour, in spite of the contradictory statement made by the defendants' sole witness on that question, and the direct testimony of the witness Harris that he could not have been making a speed of more than twenty-two miles an hour, and that he had slowed down so that his actual speed was around fifteen. All of the testimony to the effect that the trailer was partly on the wrong side of the road does not relate to the moment of impact and we believe that all inferences to be drawn therefrom are quite clearly overcome by the direct testimony, including tracks in the snow, to the contrary. When, in view of the extremely attenuated nature of the inferences to be drawn favoring plaintiff's right of recovery, the explanation of the defendant's driver, directly given and conflicting with other testimony only on the question of speed, which we regard as not highly material, we regard the conclusion as unavoidable that it would have constituted error for the trial judge not to sustain defendants' motion to direct a verdict in their favor.

The judgment of the Circuit Court of Hancock County is therefore affirmed.

*Affirmed.*