# CHARLESTON

FUCCY v. COAL AND COKE RY. CO.

Submitted September 29, 1914.   Decided October 13, 1914.

1. CONTRACTS—*Construction Contract—Extra Work.*

    The stipulation, common to corporation agreements for work and labor, that contractors may be required to perform extra work connected with that described in the contract, at the price named in the agreement or fixed by an engineer, is limited, by the subject-matter of the contract and the intention of the parties, to such proportionally small amounts of extra work as may become necessary to the completion of the undertaking contemplated by the parties when the contract was made; and work which does not fall within this limitation is new and different work, not covered by the agreement, and for which contractors may recover upon a quantum meruit.   (p. 139).

2. SAME—*Construction Contract—Alterations.*

    The provision in such contract that the corporation or its engineer may make any necessary or desirable alterations in the work and that the contractors shall receive the contract price, or a price fixed by the engineer, for work or materials required by the alterations, is limited, by the subject-matter and the intention of the

parties when it was made, to such modifications of the work contemplated at the time of the making of the contract as do not radically change the nature or cost of the work or materials required. For all other work and materials required by the alterations the contractor may recover the reasonable value notwithstanding the agreement.    (p. 139).

3.  SAME—*Construction Contract—Evidence.*

Evidence tending to prove part of the work done under such a contract was not within the contemplation of the parties to it, is admissible and justifies the giving of instructions founded upon it, even though it may not be sufficient to sustain an affirmative verdict.    (p. 141).

4.  APPEAL AND ERROR—*Verdict—Evidence.*

A verdict contrary to the decided weight and preponderance of the evidence will be set aside, notwithstanding the evidence upon which it stands was such as to warrant the giving of instructions based upon it.    (p. 141).

Error to Circuit Court, Braxton County.

Assumpsit by Joseph Fuccy against the Coal & Coke Railway Company.  Judgment for plaintiff, and defendant brings error.

*Reversed and New Trial Awarded.*

*Price, Smith, Spilman & Clay,* for plaintiff in error.

*Mollohan, McClintic & Mathews,* for defendant in error.

POFFENBARGER, JUDGE:

The judgment for $3450.00, complained of here, was recovered in an action of assumpsit, founded upon a contract for the construction of a certain railroad, a branch line of the Coal and Coke Railway, running from Gassaway to Wolf Creek.

The declaration contained five counts, but the evidence adduced tends to sustain only two of them, the common count for work and labor and a special count for the price or value of certain kinds of excavation, in excess of the price specified in the contract, the claim for which is founded upon alterations in the location of the road, made after the contract had been signed and, it is charged, in violation of its terms.

The branch line following generally the course of Elk River was nine and one-fourth miles long and was built, for the most part, along the bluff or steep hillside fronting the river. A great deal of the excavation necessary in the course of construction was solid rock, but the greater part of it was of earth and loose rock. Though, as a general rule, such excavation is classified, the contract executed in this instance made no classification thereof, but fixed a uniform price of 32¾ cents per cubic yard. The line had been surveyed, some time before the execution of the contract, by Robert E. Whitaker, an assistant engineer of the Coal and Coke Railway Company, who made a profile thereof and delivered the same to the company. After Whitaker had terminated his employment with the company, R. H. Pembroke, the chief engineer, went with the plaintiff over the line surveyed by Whitaker, and they found enough stakes to indicate very clearly the line of the survey. This investigation was made by the plaintiff by way of preparation for the submission of a bid for the grading of the new road. His bid having been accepted, the contract upon which this action is founded was entered into and, soon afterwards, he began the work, but the Whitaker location was somewhat changed by the engineer, in the course of the grading, throughout the greater part of its length. Being within 15 or 20 feet of the old location, these alterations were slight in point of distance, but many of them were along the steep bluffs and set the road back into the hills, and so required more excavation of solid rock than might otherwise have been necessary. The contention of the plaintiff is that, although the contract reserved right in the company to vary the location, these deviations were radical and not within the contemplation of the parties to the contract, wherefore he is entitled to an increased price for the additional solid rock excavation resulting from them.

The correctness of the estimate of the quantity of work done is not challenged and the entire compensation, at the price stipulated in the contract, has been paid. Though the declaration, in one or more counts, claims damages for delay occasioned by failure of the defendant to provide plans, plats and specifications, as needed, the claim fails for want of

proof. The sole issue, therefore, is whether the plaintiff is entitled to additional compensation for a portion of the solid rock removed by him.

In support of the defendant's claim of right to make the alterations complained of, the following stipulations of the contract, among others, are invoked:

"Contractors must satisfy themselves of the nature and location of the work they bid for, of the general form of the surface of the ground, of the quantity of material required for forming embankments or other work, and all other matters that can in any way influence their contract, and no information upon any such matters derived from maps, plans, profiles, drawings or specifications, or from the engineer or his assistants, will in any way relieve the contractor from all risks, or from fulfilling the terms of this contract."

"The quantities and disposition of excavations, masonry, brick work and bridging may be changed during the progress of the work at the pleasure of the chief engineer, by alterations in the line of the railroad, or in the grades, curves or dimensions in length of the section, for the purpose of more nearly equalizing or balancing the cuttings and fillings, and the calculation of quantities will be made anew for final settlement with the contractor."

"No extra charges will be allowed on account of any change that may be made during the progress of the work, or before commencing the same, either in the alignment of grade, slope or dimensions of the road. The prices named in the contract are to be taken and considered as full compensation for all the various kinds of work determined by their measurement herein agreed upon to be performed."

"The quantities marked on profile are only approximate and will have no bearing on monthly or final estimates."

"The work shall be done in strict conformity with such lines, levels, stakes, profiles, plans, maps, drawings, specifications and instructions as shall from time to time be given by the Company's Engineers as herein provided, for the guidance and direction of the Contractor."

"The company shall have the right to make any alterations that may be hereafter determined upon as necessary or

desired in the location, line, grade, plans, form or dimensions of the work, either before or after the commencement, defining them in writing and by, or without drawings; and in case such alterations increase the quantities the Contractor shall be paid for such excess at the contract rates herein specified.''

The burden of the complaint is the character of the ground on which the alterations were made, occasioning the alleged necessity of excavating more solid rock than was contemplated by the contract. The variations are fully proven. Indeed, they are not denied. The defendant, insisting that the contract authorized them, and, moreover, that they inflicted no practical injury upon the plaintiff, admits them.

Four civil engineers, Whitaker who made the original location, two Aldens who successively made subsequent locations, under the direction of Pembroke, and Curtis who did no work on the line, but went over it after its completion, at the instance of the plaintiff, to obtain information for his testimony as a witness, all say the alterations increased the excavation and that the increase was practically all solid rock. Two of them estimated such increase at about 40,000 cubic yards. Whitaker says his estimate of about 143,000 cubic yards for the entire work was based upon such location as would balance the excavation and filling, so that the excavation on the hillsides would produce, as nearly as possible, the amount of the material needed for the fill on the lower side. This, he admits, necessitated some slight departures from his survey, but such alterations were taken into consideration in his estimate of yardage. He further says his survey would have put the road back into the hill on solid ground at such points as required such location, by reason of inability to obtain footings for the fills. All of these witnesses say it was practicable to build the line on the Whitaker survey, though they all seem to think the road was put on a much better foundation by the departures from it.

On the other hand, Pembroke, chief engineer of the company, and Chapman and Venable, civil engineers of recognized ability, testifying as experts, say the road could not have been built safely or economically on the Whitaker location; not safely because one side of the track would have been

on solid ground and the other on fills extending, in many places, into the waters of Elk River and being, for that reason, unstable; and not economically, from the stand-point of the contractor or the company, because the enormous fills would have required the excavation and use of more solid rock than was taken out in construction on the new location. The testimony of these witnesses went into details and was fortified by mathematical calculations based upon measurements actually taken and profiles and cross-section maps actually used in the construction of the road. The plaintiff was bound by his contract to grade a sixteen-foot roadway. So much of that as was not cut out of the face of the hill had to be made by an embankment on the lower side, constructed out of the materials taken from the cut or obtained from some other source, and there would have been no other practical source. They say it was cheaper for the grader to cut the whole road bed in the side of the hill, by blasting the rock with heavy charges of dynamite and powder and blowing it into the river, than it would have been to have cut half of it into the hill-side and made the other half by an embankment extending into the waters of the river, since the material for such an embankment could have been obtained only from the rock on the upper side or elsewhere and hauled at great expense.

The legal propositions declared in *Henderson Bridge Co.* v. *McGrath,* 134 U. S. 260; *Woods* v. *Fort Wayne,* 119 U. S. 312; *Wolff* v. *McGavock,* 29 Wis. 290 and *Salt Lake City* v. *Smith,* 104 Fed. Rep. 457, and invoked by the plaintiff, are stated as follows in the last named case:

"The stipulation, common to corporation agreements for work and labor, that contractors may be required to perform extra work connected with that described in the contract, at the price named in the agreement or fixed by an engineer, is limited, by the subject-matter of the contract and the intention of the parties, to such proportionally small amounts of extra work as may be necessary to the completion of the undertaking contemplated by the parties when the contract was made; and work which does not fall within this limitation is new and different work, not covered by the agreement, and for which contractors may recover upon a quantum meruit."

"The provision in such contract that the corporation or its engineer may make any necessary or desirable alterations in the work, and that the contractors shall receive the contract price, or a price fixed by the engineer, for work or materials required by the alterations, is limited, by the subject-matter and the intention of the parties when it was made, to such modifications of the work contemplated at the time of the making of the contract as do not radically change the nature or cost of the work or materials required. For all other work and materials required by the alterations the contractors may recover the reasonable value, notwithstanding the agreement."

As the evidence adduced by the plaintiff clearly tends to make a case within the principles above stated, it was proper for the court to grant the prayers of the plaintiff for the three instructions given at his instance, declaring hypothetically a right of recovery in him. They are objected to, not for lack of formality or for inaccuracy of statement, but upon the ground of their submission to the jury of an inapplicable legal principle. This tendency of the evidence justified the court, also, in the refusal of instruction "A" asked for by the defendant which, if given, would have directed the jury not to consider the Whitaker location. The modification of the defendant's instruction No. 1, by change of the word "been" to "come" was immaterial and not at all prejudicial. The modification of the defendant's instructions Nos. 2, 3 and 4, limiting the right of alteration without liability for increased compensation, to such deviations as should have come within the contemplation of the parties under the terms of the contract, were fully justified. Defendant's instructions. Nos. 6, 7, and 8, if given would have told the jury, each in its own terms, that, if they believed the plaintiff was entitled to recover, they could not ascertain the amount of his recovery by deduction of the Whitaker estimate from the final estimate and allowance of compensation for the difference. The court refused Nos. 7 and 8, and modified No. 6 so as to inhibit the adoption of such measure of compensation and advise resort to all the evidence in the case for ascertainment of the amount of extra compensation to which the plaintiff was

entitled, if any.   As proposed, instruction No. 6 might have been misleading.   It inhibited adoption of one method of calculation, in positive terms, and did not indicate any other. However this may be, the modification did not prejudice the defendant in any respect, and the giving of the instruction as modified justified the refusal to give the other two relating to the same matter.

The exception founded upon the admission of the plaintiff's evidence the general character of which has been indicated is untenable for reasons already stated.

The correctness of the rulings so far considered does not preclude inquiry as to the soundness of the ruling by which the motion to set aside the verdict was denied.   Evidence that will not sustain a verdict, on account of its weakness, may nevertheless justify the giving of instructions.   *State v. Clifford,* 59 W. Va. 1, 19; *Carrico v. W. Va. Cent. & P. R'y Co.,* 39 W. Va. 86; *Hopkinson v. Richardson,* 9 Gratt. 485.   Notwithstanding sufficiency of the evidence to warrant instructions for both parties, the verdict should be set aside, if it is not sustained by evidence sufficient in law, or if it is contrary to the decided weight and preponderance of the evidence.   *Jaeger v. City Railway Co.,* 72 W. Va. 307; *State v. Clifford,* 59 W. Va. 1.

Though the evidence adduced for the plaintiff was as broad as the issue, in its scope, and direct in its tendency to maintain it, there was a marked degree of uncertainty and indefiniteness in the data upon which the opinions and calculations of the witnesses were founded.   At the time Whitaker made the survey and estimate, the ground upon which it was proposed to build the road had not been cleared and prepared for grading.   Its true character was less apparent and its adaptability less obvious then than they were when all the timber and brush had been removed, and the work of final and definite location was under way.   In his testimony he exhibited no cross-section maps and gave no figures or measurements in support of his statement that he had balanced the cutting with the filling.   His testimony was founded almost entirely upon a comparison of the profiles of the two locations and his recollection as to what he had done.

The testimony of the other witnesses for the plaintiff was narrower in its scope and less definite in character than his. The evidence for the defendant was based upon comparison of the profiles, actual measurements taken and calculations made upon such measurements, and it completely demonstrated the propriety of the alterations and their fairness to the contractor as well as the company. The witnesses giving this apparently unanswerable testimony so destructive of the *prima facie* case made for the plaintiff were not cross-examined, nor did the plaintiff take any rebuttal testimony from expert witnesses, or Mr. Whitaker. He pointed out no fallacy in it, nor attempted in any way to break or impair its force. His failure in these respects are indicative of conviction, on the part of himself and his witnesses, of the invulnerableness of the defendant's position as to the actual, physical facts involved. On the one hand, the evidence presented indefiniteness, approximation and general claims or conclusions. On the other, there was the certainty of actual measurements, calculation and mathematical demonstration, extending to almost every part of the road. The witnesses exhibited sectional maps covering all the points of deviation from the original survey. At only one place was there a change of location for reasons other than those already stated. For a distance of about 2800 feet, the railroad was set back into the hill so as to make room for a county road below it, but it does not appear that this change increased the excavation, nor, if it did, what the increase amounted to. In point of distance, the deviation was slight—only five feet from station 400 to 418 and less from the latter point to station 428. The contractor was required by his contract to make the county road at the prices fixed by it for other work. It had to go either above or below the railroad. The upper route was first contemplated. Which would have been advantageous to him does not appear. For all the evidence discloses, the upper location might have required more solid rock excavation for the county road than was occasioned by the change in the railroad location. The blasting in the railroad cut may have provided the material for the county road, and thus reduced the expense of the entire work at this point. There

is absolutely no data in the evidence upon which any estimate of increased rock excavation at this point can be based, even if the alteration can be regarded as one not within the contemplation of the parties.

In our opinion, there is a very decided preponderance of evidence against the verdict. The physical facts established clearly outweigh the ill-founded estimates and opinion evidence submitted by the plaintiff.

Hence the judgment must be reversed, the verdict set aside and a new trial awarded.

*Reversed and New Trial Awarded.*