VIRGINIA MARSHALL *v.* RALPH D. CONRAD, *Admr.*

(No. 8457)

Submitted February 9, 1937. Decided March 9, 1937.

*Tom B. Foulk* and *Wm. J. Gompers,* for plaintiff in error.

*Schmidt, Hugus & Laas, Byron D. Kuth* and *Robert H. Trenkamp,* for defendant in error.

MAXWELL, JUDGE:

This is an action for damages for personal injury received by the plaintiff in an automobile collision on a public highway. On writ of error, the defendant complains of verdict and judgment against him in favor of the plaintiff for $4100.00. The principal point relied on

for reversal is that the verdict opposes the clear preponderance of the evidence.

At the time of the accident, Virginia Marshall, the plaintiff, was riding in the front seat of an automobile owned and driven by her husband, William H. Marshall. The other automobile involved in the collision was owned and driven by Henry Gundling, who was fatally injured in the crash. Ralph D. Conrad, the defendant, is the administrator of the personal estate of Gundling. The accident happened about nine o'clock at night, in Pennsylvania, on the Lincoln Highway, about fifteen miles west of Pittsburgh, and approximately three hundred feet west of the junction of the Beaver road with the highway. It was a clear night and the roads were dry. The suit is prosecuted under a Pennsylvania statute which authorizes such an action against the personal representative of a decedent. Laws of Pennsylvania 1925, chapter 261, section 1 (b). (There is a similar West Virginia statute. Code 1931, 55-7-5).

At the point of accident, the cement surface of the highway is thirty feet wide. There is a smooth berm a few feet in width on each side of the concrete.

The Marshall car was traveling east. Its proper channel was on the south side of the middle of the highway. The Gundling car was west-bound. Its side of the highway was the north. At the place of collision and for some distance in each direction, the middle of the road was marked with a white band. Each car, immediately before the collision, was descending a slight grade. The Gundling car was just emerging from a sweeping left cure. The Marshall car was about to leave a long tangent and enter the curve (to its right). The cars collided almost squarely head-on.

The plaintiff and William H. Marshall were witnesses in her behalf. Because of the statute, Code 1931, 57-3-1, forbidding a person to testify respecting personal transactions or communications with a deceased person, in a controversy between the witness or his or her spouse and the estate of the decedent, these two witnesses were closely circumscribed in their testimony. *Strode* v. *Dyer*,

115 W. Va. 733, 177 S. E. 878. However, though they were not permitted to testify how the Gundling car approached them, they were allowed to testify concerning the manner in which their own car was proceeding just before the collision. They testified that they were traveling at the rate of about 35 miles per hour and that their car was near the south edge of the hard surface of the highway. As to the position of the cars after the accident, Marshall testified that his car was "diagonally across the road, not directly across, but sort of on an angle."

Two of the Marshall car's passengers, Arthur Brown who was riding on the front seat with the plaintiff and her husband, and Dorothy Marshall, a young lady riding in the rear seat, testified that the Marshall car was proceeding on its right side of the road. Other than stating that she saw oncoming headlights which seemed to be partly on the Marshall side of the road, Dorothy did not attempt to detail how the accident happened. Witness Brown testified that as the cars approached, the Gundling car, at a high speed, was running about the middle of the road and then swung to its left in front of the Marshall car; that after the cars came to rest, the Marshall car was on the north side and the Gundling car was "facing the south side, about three or four feet from the edge of the south side of the road."

Raymond Kronz was a witness for the plaintiff. He was proceeding eastward on the highway in a small truck, being the fourth car in rear of the Marshall car. He testified that a moment before the accident, he pulled his truck to the left with the intention of driving around and passing the three intervening cars and the Marshall car, but on observing approaching headlights (the Gundling car's lights) of a car which seemed to be running in the middle of the highway, he resumed his position in the east-bound line. He said the accident occurred almost instantly after he turned his truck back onto the south side, and that he does not know how it happened. These were all of the plaintiff's witnesses in chief.

In rebuttal, the plaintiff called to the witness stand

state policeman, F. A. Gavaghan, who had come to the scene about twenty to thirty minutes after the accident. It does not appear why this witness was not called by the plaintiff to testify in chief, because his testimony bore directly on the very basis of plaintiff's right to recover and was not in the nature of rebuttal. The position of the cars after the accident was one of the most important things in the case. Rebuttal testimony should be strictly limited to the purpose for which it is intended under the rules of admission of testimony. A plaintiff in a law action should not be permitted to reserve for so-called rebuttal the introduction of testimony going to the very basis of his right of action and clearly constituting a part of the case in chief. But, there was not objection to the order in which the state policeman's testimony was introduced, consequently, the point will be deemed to have been waived by the defendant. Gavaghan's testimony with reference to the position in which he found the Gundling car on the highway was contradictory and inconsistent. He first testified that he found the Gundling car sitting near the middle of the highway, at a slight angle, with its rear toward the north edge and the front end at the middle line and extending slightly over it. This meant, of course, that the Gundling car, as he found it, stood with its greater portion on the north side of the middle line. Later in his examination, he testified that the greater part of the Gundling car was on the south side of the middle line. He said that he was mistaken in his first statement; that counsel confused him as to directions, and that his second statement as to the position of the Gundling car was in correction of his first.

The record seems to raise no doubt that after the accident the Marshall car was on its left (the north) side of the highway, except that the right-hand portion of the front end may have extended slightly over the white line. The car, when it came to repose, was still facing east; it stood at a slight angle with its rear swung toward the north edge of the concrete.

Immediately prior to, and at the time of, the accident,

the Marshall car was being trailed by the car of Dr. Dante Pigossi wherein, in addition to Dr. Pigossi, who was driving, there were his wife, who sat on the front seat with him, and three young ladies, Edith Costello, Elvira Costello and Jean Belgrade, on the rear seat. Dr. Pigossi, Mrs. Pigossi, and the two Costello girls testified that as they moved along in rear of the Marshall car, they observed it weaving on the highway, and that immediately before the accident, it turned suddenly into the path of the approaching Gundling car. Dr. Pigossi testified that when the cars collided "they crashed themselves right in the air and came down with a thud"; that the Gundling car "stopped as dead as though it hit a concrete wall"; that after the cars came to rest, the Gundling car was on its right (north) side of the middle line of the highway; that the cars did not change their relative positions after they came together, and that as he immediately drove past the wreck to park his car in order that he might render aid, there was no obstruction on the south side.

Traveling west that night, trailing the Gundling car, was a car operated by Arthur Kenneweg, accompanied by his wife and young son. Because of the suddenness with which the crash brought the Gundling car to a stop, its rear was struck by the front of the Kenneweg car, but not seriously. Both Mr. and Mrs. Kenneweg testified that as they followed the Gundling car immediately prior to the accident, it was traveling on its right side of the road; that they noticed nothing irregular about the manner in which it was being operated; that instantly before the crash, they observed the headlights of a car approaching on the wrong side of the road; that following the accident, both the Gundling car and the Marshall car rested on the north side of the road. Also, they testified that, directly before the impact, the approaching car (Marshall car) started to swing back toward its proper side of the road, and that the Gundling car likewise seemed to make a slight turn toward the center line of the road. This affords a plausible explanation why the cars stood at a slight angle after they came to a stop.

Two witnesses, J. R. Aiken and Mrs. R. W. Sollberger, living on opposite sides of the highway near the place of accident, attracted by the noise of the crash, hastened to the scene. Each testified that both the Marshall and the Gundling cars stood on the north side of the middle of the highway.

On behalf of the plaintiff, in effort to explain why the Marshall car came to rest on the north side of the highway, William H. Marshall and Arthur Brown testified, in effect, that the Gundling car pushed the Marshall car from the south side into its position of repose on the north side. Specifically, Brown said that the Gundling car seemed to hit the Marshall car "and twist it around, pushed it back a little * * * the Buick (Marshall's car) had just turned over and back to the north side of the highway." Marshall said that "the impact threw it (the Marshall car) to one side, twisted it around."

The plaintiff having been a passenger in the William H. Marshall car at the time she receiver her injury, it follows, of course, that the negligence, if any, of William H. Marshall in the operation of the car should not be imputed to her. If Gundling was negligent, contributory negligence of Marshall would not bar the plaintiff from recovery. But it is equally basic that she has no grounds for recovery unless it appears from a fair preponderance of the evidence that Gundling was negligent and that his negligence was a proximate cause of the plaintiff's injury. The case must be appraised on the last stated basis.

The witnesses who were in the car trailing immediately behind the Marshall car, as well as the witnesses in the car which was close behind the Gundling car, are in accord in stating that the Marshall car was on the wrong side of the road at the time of the collision. The plaintiff, her husband, and her witnesses, Brown and Dorothy Marshall, testified that the Marshall car was on its proper side of the road. Brown also said that the Gundling car swung to the left just before the impact. Witness Kronz, it will be remembered, testified that the approaching car (Gundling's) seemed to be occupying about

the middle of the highway. The policeman tended to support the plaintiff's theory that the Gundling car was on the wrong side. When the testimony for the plaintiff is contrasted with the defendant's, obviously the situation presents a sharp conflict, which, under familiar rules, creates a problem primarily for jury determination. But a jury verdict is not absolute unless it is consistent with controlling facts. Such facts sometimes fall into the category of physical facts.

We are of opinion that there is a dominating physical fact in this case, and that the effort of plaintiff to explain it and avoid its significance has manifestly failed. We refer to the position of the cars following the accident. Though there is some deviation in the testimony as to the position of the Gundling car, there is no material conflict respecting the Marshall car. The latter came to rest on its left side of the road. It does not square with the common experience and observation of men that the Marshall car could have been struck head-on by another automobile about the same size, near the south edge of a dry thirty-foot hard surfaced highway, and have been pushed or twisted around by the opposing car for a distance of from ten to twenty feet, causing it (Marshall car) to come to repose on the opposite side of the highway. Such is the only explanation offered on behalf of the plaintiff as to why the Marshall car rested where it did. We cannot accept that explanation, nor was the jury warranted in accepting it.

The unexplained and unjustifiable fact of the presence of the Marshall car on the north side of the middle line of the hard surface when it was stopped by the impact, necessitates the deduction that the proximate cause of plaintiff's injury was the negligence of Marshall in being on the wrong side of the road, and that Gundling was not negligent. Thus, on this record, there is presented an insuperable barrier to a recovery by the plaintiff. The evidence does not sustain the verdict. On writ of error, a verdict against the plain preponderance of the evidence should be set aside. *Fuccy* v. *Coal & Coke Ry. Co.*, 75 W. Va. 134, 83 S. E. 301. To that settled principle there is the

wholesome corollary that a verdict inconsistent with physical facts cannot stand. *Owen* v. *Power Co.*, 78 W. Va. 596, 89 S. E. 262; *Keller* v. *Norfolk & W. Railway Co.*, 109 W. Va. 522, 156 S. E. 50.

For the reasons set forth, we reverse the judgment, set aside the verdict and remand the case to the trial court.

*Reversed; remanded.*