CLARENCE ELMER REECE

v.

DOROTHY LEE HALL, *et al.*

(No. 10809)

Submitted September 25, 1956. Decided December 18, 1956.

*W. H. Ballard*, II, *P. J. Flanagan, M. E. Boiarsky,* for plaintiff in error.

*Samuel A. Christie, Sanders, Smoot & Sanders,* for defendants in error.

GIVEN, JUDGE:

Plaintiff, Clarence Elmer Reece, instituted his action in the Circuit Court of McDowell County against defendants, Dorothy Lee Hall, Arthur H. Cook and Ethel Gillespie, for recovery of damages alleged to have resulted from negligence of defendants in the operation of automobiles. On the first trial, the jury were unable to agree on a verdict as to defendants Hall and Gillespie, but, on direction of the court, returned a verdict for defendant Cook. On the second trial, the jury returned a verdict of $15,000.00 in favor of plaintiff against defendants Hall and Gillespie. Judgment was entered on the verdict against Hall, but the court set aside the verdict as to Gillespie, and granted her a new trial. Questions arising on the writ of error granted by this Court relate only to the action of the trial court in setting aside the verdict returned against Gillespie, no writ of error having been sought as to the judgment against Hall.

Plaintiff's injury occurred on McDowell Street, in the City of Welch, on February 28, 1953, on a Saturday afternoon, north of Bank Street, approximately opposite the front of the fire station. A traffic light was operating at the intersection of McDowell and Bank Streets. A number of automobiles were stopped on McDowell Street, awaiting a change of the traffic light signal. Plaintiff, intending to cross McDowell Street, from the east side to the west side, near the rear of the last stopped automobile, one being driven by John Goins, observed the automobile then being driven by defendant Gillespie approach the rear of and stop within about two feet of the Goins automobile. Plaintiff then attempted to pass through the space between the rear of the Goins automobile and the front of the Gillespie automobile, but in doing so was struck and fastened by an impact of the Gillespie automobile being forced against the rear of the Goins automobile. There is no dispute as to the facts just stated. Neither is there any doubt that the impact which first fastened plaintiff was caused by the driving of the automobile. then being operated by the defendant Hall,

against the rear of the Gillespie automobile. Plaintiff contends, however, that after the first impact the Gillespie car was moved backward, and, because of the negligence of the defendant Gillespie, was a second time driven against the rear of the Goins automobile, before plaintiff could extricate himself from the position in which he was fastened by the first impact. As to this contention the evidence is in sharp conflict, and the evidence relating to this point introduced on behalf of plaintiff necessarily must be stated in detail.

Ardella Carter was a witness for plaintiff. She lived in an apartment near the point of the accident and, at the time of the accident was, from an open window, watching traffic on McDowell Street. She observed plaintiff start between the Goins and Gillespie automobilles and testified that the "cars came together * * * and he was caught between those cars * * * they went back a little, then came together again. Then he crumpled over". She futher testified to the effect that the space between the rear of the Goins automobile and the front of the Gillespie automobile, when plaintiff started between them, was only about two feet. Jim Weddle also observed the accident from a window, and testified to the effect that when plaintiff was between the two automobiles, they came together, "pinning him between the cars. The car rolled back just a little bit and came up against him again and held him". On cross-examination, this witness was asked the following questions, to which he gave the following answers: "Q. And the car in front moved forward slightly didn't it? A. I don't know whether the car in front moved forward slightly or whether the car that hit him moved back a little. I couldn't say. I just know they opened up and released him for a moment. Q. And he was momentarily released? A. Yes, sir. Q. And the cars pinned him against the bumper again? A. Yes, sir. Q. And it was over; it all occurred in a matter of seconds? A. That is right".

Donald Dotson, a member of the fire department, observed the accident. He testified: "* * * I was looking

across talking, and the boy throwed his hand out on the car as it hit him. The car seemed to give back with his hand when he struck it back. Q. How far back did that car go? A. I will say a couple of feet. I wouldn't be exact but it was somewhere around about a couple of feet. Q. When the car went back, what did he do then? A. Well, it seemed to make another bump and when it made another bump it hit this boy's leg and this car knocked Johnny Goins' car up on the station wagon and that is when this boy, I think his name is Buck Reece, when it caught him and held him between the two cars." On cross-examination, the witness was asked about the distance the Gillespie automobile moved back after first striking the Goins automobile, and stated: "When I first saw him step down between there, that is when the calamity happened. Q. He was hit by the first blow? A. He was hit by the first blow. Then he pushed the car away and it seemed the car rolled back and come back again, the way it appeared, and that is when Johnny Goins car, Q. It didn't go very far? A. It moved back, I will say, a couple of feet. I couldn't say definitely. It rolled back and then started to lunge."

Plaintiff testified to the effect that when he was about halfway between the two automobiles he heard a "bump" and "tried to back out and stuck up my hand and hit Mrs. Gillespie's car * * * When I put my hand up in the middle of the car it stopped. It was just like a bump in back. I heard it and was trying to get back out of the cars and when I got this leg out, it seemed like the car just jumped at me then."

John Goins, a patrolman of the City of Welch, driver of the automobile hit by the Gillespie automobile, heard the automobiles behind him strike and immediately looked back and saw plaintiff falling. He was asked if the accident happened suddenly and answered: "Yes, it was just like a thought almost the way it happened. I heard that noise and it all come together." As before noted, the evidence offered on behalf of the defendant Gillespie is in sharp conflict with the evidence offered on behalf of

plaintiff, and is to the effect that there was only one impact between the Gillespie automobile and the Goins automobile, and that such impact was the result of the Hall automobile being driven against the rear of the Gillespie automobile. We are necessarily bound, by the jury verdict, as to the contention of plaintiff that there was a second impact of the Gillespie automobile with the rear of the Goins automobile, but the mere happening of the second impact does not necessarily establish negligence of the driver of the Gillespie automobile.

There was no "crosswalk" across McDowell Street at the point where plaintiff was attempting to cross at the time of the accident. An ordinance regulating traffic over the streets of the City of Welch defines crosswalk as "That portion of a roadway ordinarily included within the prolongation of curb and property lines at intersections, or any other portion of a roadway clearly indicated for pedestrian crossing by lines or other markings on the surface." Other pertinent provisions of the ordinance are: "The operator of any vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at the end of a block, except at intersections where the movement of traffic is being regulated by police officers or traffic control signals"; and "Every pedestrian crossing a roadway at any point other than within a marked or unmarked crosswalk shall yield the right of way to vehicles upon the roadway, provided that this provision shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of pedestrians."

While numerous points are made as to the action of the trial court is setting aside the verdict returned against the defendant Gillespie, we think the determination of questions relating to negligence of defendant and contributory negligence of plaintiff will furnish answers to the controlling questions. We first consider whether plaintiff was guilty of such negligence as would necessarily bar any recovery by him. If so, there was no error in the action of the trial court in setting aside the verdict.

The evidence establishes that plaintiff did not attempt to pass between the Goins and Gillespie automobiles until after both of the automobiles had completely stopped. Several automobiles in front of the Goins automobile were also stopped, awaiting a signal to enter the intersection of McDowell and Bank Streets. Vehicular traffic was permitted to move only south on McDowell Street at the point where plaintiff was attempting to cross, and for some distance north and south of that point. There was testimony to the effect that it was not unusual for pedestrians to cross McDowell Street at points other than where crosswalks existed. The ordinance seems to sanction that practice, by requiring "Every pedestrian crossing a roadway at any point other than within a marked or unmarked crosswalk" to "yield the right of way to vehicles". In the circumstances, no yielding by plaintiff was required, the automobiles being then stationary. It can hardly be argued that the negligent action of the driver of the Hall automobile, in driving that automobile into the rear of the Gillespie automobile, could or should have been expected or foreseen by plaintiff. See *Wilson* v. *Edwards*, 138 W. Va. 613, 77 S. E. 2d 164; *State ex rel. Cox* v. *Sims, Auditor*, 138 W. Va. 482, 77 S. E. 2d 151. In such circumstances, we fail to see any improper or negligent action on the part of plaintiff in attempting to pass between the two automobiles. It appears that he did that which any ordinarily prudent person would have done in the same circumstances. "The first element of actionable negligence is a lack of care; injury from another's act or omission not involving lack of due care does not give rise to a cause of action." 65 C.J.S., Negligence, Section 2. See *Morrison* v. *Appalachian Power Co.*, 75 W. Va. 608, 84 S. E. 506; *Woodley* v. *Steiner*, 112 W. Va. 356, 164 S. E. 294; *Johnson* v. *United Fuel Gas Co.*, 112 W. Va. 578, 166 S. E. 118; *Cashell* v. *Southern Ry. Co.*, 152 Va. 335, 147 S. E. 209.

We also reach the conclusion that the evidence before us would not warrant the finding of any act of negligence, on the part of the defendant Gillespie, which con-

tributed proximately to the injuries suffered by plaintiff. There can be no doubt that the impact of the Gillespie automobile, which first forced plaintiff against the rear of the Goins automobile, resulted from the sole action of the driver of the Hall automobile, an action completely beyond the control of the defendant Gillespie. For injuries resulting from such action, the defendant Gillespie clearly is not liable. The evidence further clearly establishes that only an instant of time, "just like a thought", elapsed between the time the Hall automobile struck the Gillespie automobile, and the time plaintiff was last fastened by the Gillespie automobile, and that only from two to four feet separated the Goins and Gillespie automobiles at any time after the Gillespie automobile first came to a stop. Plaintiff's own testimony establishes that between the two impacts he had only time to remove one leg from between the automobiles, though he was not more than halfway between them when first struck. It seems clearly apparent, therefore, that the defendant Gillespie could not have removed her foot from the brake to the accelerator of her own automobile and have driven it against plaintiff, causing the second impact, as contended by plaintiff. Clearly, there was not sufficient time for her to have done so. "A verdict, inconsistent with physical facts which are admitted to be true or are clearly established, will be set aside as contrary to the plain preponderance of the evidence." Syllabus, *Marshall* v. *Conrad, Admr.*, 118 W. Va. 321, 191 S. E. 553. See *Raines* v. *Faulkner*, 131 W. Va. 10, 48 S. E. 2d 393; *Browning* v. *Monongahela Transport Co.*, 126 W. Va. 195, 27 S. E. 2d 481; *Miller* v. *Blue Ridge Transportation Co.*, 123 W. Va. 428, 15 S. E. 2d 400; *Acree* v. *Eureka Pipe Line Co.*, 122 W. Va. 242, 246, 8 S. E. 2d 186.

Another principle of law would deny plaintiff any recovery against the defendant Gillespie, in so far as the facts before us show, assuming that she was responsible for the second impact. The striking of her own automobile by the Hall automobile, forcing it into the Goins automobile and striking plaintiff in doing so, undoubtedly

created a sudden emergency, and there can be no doubt that such emergency continued until after the second impact. The principle of law is stated in 60 C.J.S., Motor Vehicles, Section 257, in this language: "A motorist confronted by a sudden emergency not caused by him is not held to the same accuracy of judgment or degree of care as in ordinary circumstances. He is not necessarily negligent because he makes a mistake of judgment or fails to adopt the best or wisest course for averting injury, and is not liable for injury if he exercises reasonable care or prudence, considering the circumstances." In such circumstances, the driver of an automobile is not liable for such acts of negligence as an ordinarily prudent person would be in usual or normal circumstances, but only for such acts of negligence as would not have been done by an ordinarily prudent person in the circumstances of the sudden emergency. "6. The care required by law of one in a sudden emergency is that of the average person under like circumstances." *Robertson* v. *Hobson*, 114 W. Va. 236, 171 S. E. 745. See *Mulroy* v. *Co-operative Transit Co.*, 142 W. Va. 165, 95 S. E. 2d 63; *State ex rel. Cox* v. *Sims, Auditor*, 138 W. Va. 482, 77 S. E. 2d 151; *Adkins* v. *Raleigh Transit Co.*, 127 W. Va. 131, 31 S. E. 2d 775; *O'Dell* v. *Universal Credit Co.*, 118 W. Va. 678, 191 S. E. 568; 65 C.J.S., Negligence, Section 17.

What has been said with reference to negligence of plaintiff and the defendant Gillespie sufficiently answers the questions raised as to the giving or refusing of instructions. It is contended by the defendant Gillespie that the action of the trial court in setting aside the verdict was proper, for the reason that plaintiff failed to prove the reasonableness of or necessity for his treatment at the hospital, the amount only of such charge having been proved. Since the action of the trial court must be sustained on the grounds above indicated, we need not further consider such contention. See, however, *Wendell* v. *G. C. Murphy Co.*, 137 W. Va. 135, 70 S. E. 2d 252.

Another complaint as to the action of the trial court related to its refusal to permit the plaintiff to file an

amended declaration, tendered after the trial court had ruled on the motion to set aside the verdict, to the effect that the declaration did not sufficiently charge acts of negligence on the part of the defendant Gillespie. The order relating thereto, however, shows that the trial court did not refuse to file the amended declaration, but considered the motion to file the amended declaration "only from the standpoint of bringing the allegations of the original Declaration in accord with the proof at the trial at which the verdict complained of by the defendant, Gillespie, was returned, and not for the purpose of a new trial, as to the latter of which the Court withholds its judgment until that question arises." Since the trial court has not passed on the question, we can not consider it in the first instance. See *In re: Estate of Nicholas*, 142 W. Va. 80, 94 S. E. 2d 452.

The action of the trial court in setting aside the verdict returned against the defendant Ethel Gillespie, and awarding her a new trial, is affirmed.

*Affirmed.*