GARETH NEAL MILLER, AN INFANT WHO SUES BY HIS FATHER DALE MILLER, AS HIS NEXT FRIEND,

v.

BOYD BOLYARD

(No. 10790)

Submitted January 22, 1957. Decided March 12, 1957.

*E. Wayne Talbott, Edward T. Luff,* for plaintiff in error.

*George M. Kittle, Frank G. Kittle,* for defendant in error.

HAYMOND, JUDGE:

This is an action of trespass on the case instituted in the Circuit Court of Barbour County in 1954, in which the plaintiff Gareth Neal Miller, an infant who sues by his father Dale Miller, as his next friend, seeks to recover damages for serious and permanent personal injuries sustained by the plaintiff which resulted from the alleged negligence of the defendant Boyd Bolyard.

The declaration, containing three counts and alleging damages in the amount of $25,000.00, charges in substance, in the first count, that the defendant was negligent in operating his truck with a rock wedged in the space between the tires and the wheels of its left rear dual wheel, and in permitting the rock to be thrown

through the windshield of the truck in which the plaintiff was riding and to strike the plaintiff; in the second count, that the defendant was negligent in operating his truck with a rock wedged in the space between the tires and the wheels of its left rear dual wheel when the defendant knew or by the exercise of due care should have known that the rock was so wedged, and in permitting it to be thrown through the windshield and to strike the plaintiff; and in the third count, that the defendant was negligent in operating his truck for a distance of more than a quarter of a mile with a rock wedged in the space between the tires and the wheels of its left rear dual wheel which protruded beyond the tires and struck the surface of the highway at each revolution of the dual wheel when the defendant knew or by the exercise of reasonable care should have known that the rock was so wedged, and in permitting the rock to be thrown through the windshield and to strike the plaintiff.

The demurrer of the defendant to the declaration and each of its counts was sustained as to the first count and overruled as to the second count and the third count, and the defendant filed his plea of not guilty. During the trial of the case the defendant, at the conclusion of the evidence introduced in behalf of the plaintiff and after the introduction of all the evidence separately moved the court to strike the evidence introduced by the plaintiff and to direct a verdict for the defendant. The court overruled both motions and, though giving numerous instructions offered by each of the parties, refused to give Instruction No. 1 submitted by the defendant which would have directed the jury to return a verdict for the defendant.

On June 10, 1955, the jury returned a verdict in favor of the plaintiff for $5,000.00. By order entered June 24, 1955, the circuit court overruled the motions of the defendant to set aside the verdict and grant him a new trial, in arrest of judgment, and for judgment notwithstanding the verdict, and entered judgment in favor of

the plaintiff and against the defendant for the amount of the verdict, with interest and costs. To that judgment this Court awarded this writ of error and supersedeas on December 9, 1955, upon the petition of the defendant.

At about one thirty o'clock in the afternoon of June 8, 1953, the plaintiff, then a boy twelve years of age, was riding on the right side of the front seat of a one and one half ton 1951 Chevrolet delivery truck, owned and driven by his father, Dale Miller, which was traveling north between Nestorville and Kasson, in Barbour County, on State Route 92, a smooth surfaced macadamized public highway the improved portion of which is approximately sixteen feet in width. As the truck in which the plaintiff was riding rounded a gradual curve to its left, and while traveling on the right side of the center of the road at a speed of thirty to forty miles per hour, it met and passed a red one and one half ton 1948 GMC truck, owned and driven by the defendant Boyd Bolyard, who was accompanied by his nephew, which was proceeding south on its right side of the center of the highway at a speed of approximately thirty to thirty five miles per hour. Each of the trucks was equipped with rear dual wheels.

The truck in which the plaintiff was riding was returning from a trip to Clarksburg and other localities where milk had been delivered and contained a number of empty milk cans. The flat body behind the cab of the truck driven by the defendant was loaded with tracks, the carriage which moves on them, and other equipment, including tools, a steel drum and cans, of a dismantled saw mill which the defendant was transporting from a location near Moatsville to a site near Valley Furnace where the defendant resided and is situated a few miles from the place of the accident. The load weighed about three tons and extended about one foot beyond the rear of the fourteen foot body of the truck.

As the front ends of the two trucks approached each other from opposite directions and came abreast a rock,

weighing approximately sixteen pounds, about ten inches long, fourteen inches wide and two inches thick, was hurled or cast against and through the right section of the windshield of the truck in which the plaintiff was riding, struck the head and one arm of the plaintiff, and inflicted serious injuries which rendered him unconscious. The father of the plaintiff drove his truck farther to the right of the highway and stopped after traveling a short distance. After a delay of several minutes and the arrival of a passing automobile the plaintiff was taken to a hospital in Philippi where he remained until July 1, 1953, for treatment of his injury.

The father of the plaintiff did not recognize the truck which passed his truck at the time of the accident and could not identify its driver. He did not know where the rock was when its course toward the windshield of his truck began and he did not see it until it suddenly appeared in the air immediately in front of him. No other person saw the rock until after it had passed through the windshield, had struck and dented the rear wall of the cab of the truck, and had fallen on the floor of the cab of the truck.

The defendant did not see the rock when his truck passed the truck in which the plaintiff was riding and did not know that the rock had struck the other truck or that the plaintiff had been injured until after dark the same evening when a member of the West Virginia Department of Public Safety, who began an investigation of the accident about four thirty o'clock that afternoon, came to the home of the defendant, told him about the accident, examined his truck and identified it as the truck which had passed the truck in which the plaintiff was riding when the accident occurred. At the time of his visit to the home of the defendant the state policeman, with two other persons who accompanied him, and the defendant examined the rear left dual wheel of the truck with the use of a flashlight and discovered marks which indicated that a stone or some hard substance had

been wedged or imbedded between the tires and the rims of the left rear dual wheel.

The defendant stated that he was "astonished" when he was informed of the accident and the state policeman testified that the defendant was shocked and dumfounded when he was told about it. The defendant also stated that after he left the place from which the saw mill had been removed he drove his truck for some distance on an unimproved road on which workmen were breaking loose stone; and that before he came to that section of that road he stopped to eat lunch and at that time noticed the rear wheels but saw no rock in any of them. He further stated that after he entered upon the hard surfaced road about a mile from its junction with State Route 92 and while traveling on that road and on State Route 92 until and after he passed the truck in which the plaintiff was riding nothing occurred in connection with the operation of his truck to indicate that any stone was wedged in any of its wheels; that though the load on his truck was properly fastened to prevent it from falling from the truck parts of the load moved and rattled on its bed; that the operation of the truck and the movement of parts of its load were noticeably noisy; that when he passed the truck in which the plaintiff was riding he heard a noise which he thought was caused by something falling from his truck; that he and his nephew, who stood on the running board of his truck, looked to the rear, did not notice anything unusual, and did not see the other truck; and that he did not stop his truck but proceeded to the place to which he was transporting the parts of the saw mill.

One of the men who had worked on the unimproved road and another witness testified that when or just before the truck of the defendant came to the hard surfaced section of the road they looked at the wheels of the truck but did not see any stone in any of them.

Shortly after the accident occurred a young man who lived in a house located between a hundred feet and three hundred feet north of the place where the truck in which

the plaintiff was riding had been parked and who heard but did not see the accident, went to the truck, saw the plaintiff in his injured condition, the break in the windshield, and the stone, and observed blood in the cab of the truck. He did not examine the surface of the road at that time. He remained near the truck until after the plaintiff had been taken from it. He later returned to the scene of the accident and between four and five o'clock that afternoon he, a state policeman, and another officer examined the surface of the highway and found marks near the center of the road on the side or section on which the truck of the defendant had traveled. They consisted of indentations about four inches in length and were located from eight feet to ten feet apart which was approximately the distance covered by one revolution of the dual wheel of the truck of the defendant. He also found a mark on the highway on the side used by the truck in which the plaintiff was riding. He saw a red truck loaded with parts of a saw mill pass his home immediately after the accident occurred and by imparting that information assisted in identifying it as the truck of the defendant.

During the afternoon of that day other persons saw the stone, on which were blood, hair and tar, and observed the marks on the road which were described as marks made by a stone or a heavy blunt hammer and which continued for a distance variously estimated of from sixty feet to one fourth of a mile on the highway where the truck of the defendant had traveled at and near the scene of the accident. Though there is testimony that the marks when examined appeared to be of recent origin no witness saw them when or immediately after they were made or knew how long they had been on the highway. Another witness saw the truck of the defendant as it neared the point of the accident, heard but did not see the accident, and also heard it make "a thump or a rumble" while traveling on the road but he could not say that there was a rock in the wheel of the truck at the time.

The father of the plaintiff and another witness of-

fered in his behalf, both of whom had driven trucks with dual wheels on improved and unimproved roads for several years, testified that in the operation of trucks by them on dirt roads rocks as large as four inches to six inches in size and of the dimensions of six inches in length, six inches in width, and two inches in thickness had occasionally become wedged between the tires and the rims of dual wheels, and that the presence of a rock so wedged could be recognized when the truck was in motion by vibrations and the noises and the thumps which accompanied the revolutions of the wheel.

To rebut that testimony in behalf of the plaintiff, the defendant and three witnesses produced in his behalf testified that tests had been made by them with the truck of the defendant on other hard surfaced sections of State Route 92 during which the truck was operated at a speed of about thirty five miles an hour with a rock of approximately the same size as that which struck the plaintiff wedged between the tires and the rims of the same dual wheel of the truck of the defendant, and that from any movement or vibration of the truck or any noise made by it during the tests the presence of the rock in the dual wheel was not detected by any of them. Two of those witnesses also testified, on the basis of their experience of several years in driving trucks with dual wheels, that unless a rock wedged between the tires and the rims of a dual wheel protruded beyond the perimeter of the tires and raised the tires above or off the surface of the road the presence of the rock would not be known or detected in the operation of the truck.

The injury sustained by the plaintiff was severe, painful and permanent in character. He was unconscious when admitted to the hospital and he remained in that condition for a period of from two to six days. The injury included a compound fracture of his skull which exposed a portion of his brain and a fracture of his left fore-arm. He was required to undergo three surgical operations one of which was performed immediately after he entered the hospital. The second operation was per-

formed about two weeks after the first operation and the third operation was performed by a specialist at a hospital in Bluefield. In the treatment of the injury to his skull it was necessary to insert a permanent metal plate in the injured area. The evidence shows that since the accident he has experienced frequent headaches and spells of dizziness, that his speech and his capacity to study have been adversely affected, and that his ability to engage in athletic and other physical activities has been impaired.

The material facts are not disputed except those which relate to the question whether the defendant knew or should have known of the presence of the rock in the dual wheel of his truck and those which relate to the effect of the injury upon the physical and mental condition of the plaintiff since the accident.

The errors assigned by the defendant challenge the action of the circuit court (1) in refusing the separate motions of the defendant to direct a verdict in his favor; (2) in refusing to give Instruction No. 1 offered by the defendant which would have directed the jury to return a verdict for the defendant; (3) in refusing to set aside the verdict and grant the defendant a new trial; and (4) in entering judgment in favor of the plaintiff. The controlling question presented by the assignments of error is whether the evidence establishes negligence of the defendant which was the proximate cause of the injury to the plaintiff.

The evidence is sufficient to justify the jury in inferring that the rock which struck and injured the plaintiff was imbedded in the left rear dual wheel of the truck of the defendant and, in the operation of the truck, was propelled or thrown against and through the windshield of the truck in which the plaintiff was riding immediately before the trucks passed each other on the highway. But this fact and the occurrence of the injury do not constitute actionable negligence upon the part of the defendant.

The mark on the side of the highway where the truck in which the plaintiff was riding had traveled indicates that the rock after leaving the wheel of the truck of the defendant in a forward diagonal direction struck the surface of the highway, bounced and caromed upward, and passed through the windshield of the other truck. It is reasonable to conclude that a rock imbedded between the tires and the rims of a dual wheel, thrown or ejected from it while it was revolving, would follow a direct forward or backward course instead of proceeding in a forward diagonal direction. The course followed by the rock was not attributable to the speed at which the truck of the defendant was traveling. The course of the rock could have been the same at a lower or a higher speed than that at which the truck was traveling when the accident occurred. The plaintiff does not contend that the speed of the truck of the defendant at the time of the accident was unlawful, dangerous or unreasonable. The two trucks were traveling at approximately the same speed and the speed at which each was traveling was reasonable and was not excessive.

No decision of this Court has been cited by counsel or has been otherwise brought to its attention involving the question of the liability of an operator of an automobile on a public highway for injury caused to persons or property on or near the highway by objects cast or thrown from or by a wheel of a moving automobile. That question, however, has been considered and determined with variant results by appellate courts in other jurisdictions in cases involving facts which in some respects were different from the material facts of this case. In some of those cases liability or lack of liability was determined by the speed of the automobile which cast a rock which caused an injury.

In *Teche Lines, Inc.* v. *Bateman,* 162 Miss. 404, 139 So. 159, and *Howard* v. *Bell,* 232 N. C. 611, 62 S. E. 2d 323, the plaintiff was permitted to recover for injuries caused by a stone thrown or cast by the wheels of a motor vehicle. In each of those cases, however, the negli-

gence of the defendant consisted of the excessive speed at which the motor vehicle was traveling upon a highway which was covered with or which contained loose stones when it cast or threw the stone which injured the plaintiff. These or similar conditions, concerning the character of the highway and the speed of the truck of the defendant when the injury occurred, are not here present. For these reasons the holding in each of those cases does not apply to or control the decision in this case.

In *Sylvester* v. *Shea*, 280 Mass. 508, 182 N. E. 916, it appeared that the defendant backed a truck on a street in the City of Boston; that at the time he was moving the truck he saw or should have seen on the street a stone six or seven inches in diameter, weighing ten or twelve pounds; and that the left rear tire of the truck struck and threw the stone to a nearby sidewalk where it hit and injured the plaintiff. In reversing a judgment for the plaintiff the Supreme Judicial Court of Massachusetts in the opinion said: " * * * there was error in the ruling that the evidence warranted a finding for the plaintiff and in the refusal of the defendant's request to the contrary. The throwing of the stone, while not unprecedented, was such an unusual occurrence under the circumstances that it could not be found that the defendant in the exercise of reasonable care ought to have guarded against it."

In *Burkes* v. *Lieberman*, 218 App. Div. 600, 218 N. Y. S. 593, affirmed, 245 N. Y. 579, 157 N. E. 865, it appeared that an automobile ran upon a small pile of loose rocks and cast one of them weighing fourteen pounds to the side of an unimproved narrow road where it struck and broke the leg of the plaintiff. The Appellate Division of the Supreme Court of New York, in the absence of evidence that the driver of the automobile could see the stones, or should have known that they were in the road, or that the speed of the automobile was excessive in the circumstances, and because the driver could not reasonably have anticipated that such an event would happen, held that actionable negligence of the defendant had

not been established and reversed a judgment in favor of the plaintiff. In the majority opinion, 218 App. Div. 600, 218 N. Y. S. 593, the Court said: "Before the plaintiff is entitled to recover, he must prove that the accident was the result of the negligence of the defendant. The testimony does not show that the driver was negligent. As the car was going around a sharp curve, it is not likely that its rate of speed was very high. To say that the car was going rather fast does not mean anything, especially as defendant was traveling round a sharp curve on a very narrow road. Nor is there any evidence that the driver of the car could see the stones, or had reason to know that a small pile of stone would be in the roadway, or that he was negligent in not observing the same. He could not reasonably anticipate that such a phenomenon would happen as that described in the evidence for plaintiff. There is no proof in this case that the defendant did anything negligently, or omitted to do any act that he should have done, and no violation of law of any kind in the operation of the machine is shown."

In *Manning* v. *Dale Engineering Company*, 269 N. Y. 636, 200 N. E. 34, affirming 240 App. Div. 749, 265 N.Y.S. 985, it appeared that several trucks of the defendant were engaged in hauling material for use in connection with the reconstruction of the highway near the premises of the plaintiff and that for a period of at least three weeks before the injury to the plaintiff occurred the trucks when passing the property of the plaintiff cast stones from their wheels on the sidewalk, the lawn, and the porch, and against the house occupied by the plaintiff; that upon one occasion when two of the trucks were passing each other while traveling in opposite directions the wheels of one of them cast through one of the windows of the house a large stone which struck and injured the plaintiff. The Appellate Division of the Supreme Court of New York, in reversing a judgment for the plaintiff, held that the foregoing facts were not sufficient to show that the defendant or the driver of his truck had actual or constructive notice that the trucks

had thrown any stones at any time and that the finding of negligence upon the part of the defendant was against the weight of the evidence. The Court of Appeals affirmed the judgment of the Appellate Division in favor of the defendant.

In *Bowling Green-Hopkinsville Bus Company* v. *Edwards* and *Southwestern Construction Company* v. *Edwards*, 248 Ky. 684, 59 S. W. 2d 584, which cases were consolidated and disposed of together, it appeared that the plaintiff, an unmarried woman, was a passenger in the bus which passed a truck of the other defendant traveling in the opposite direction when the injury to the plaintiff occurred. Both vehicles were operated on a section of the highway which was covered with loose rocks of small dimensions one of which was thrown through a window of the bus and injured the plaintiff. Though the plaintiff testified that the speed of the bus was from fifty to fifty five miles per hour, she was unable to estimate the speed of the truck which, according to the evidence introduced by the defendant, was traveling at a reasonable rate of speed. The driver of the bus testified that he did not know that the stone came into the bus but that he heard the plaintiff scream and say that something had hit her. No rock was found inside the bus. Travel was restricted over the highway but the bus was given permission to use it and the truck was engaged in hauling pipe for a gas line under construction in the highway. Both vehicles had a right to be where they were at the time of the injury. Whether the bus or the truck threw the stone which struck and injured the plaintiff did not clearly appear from the evidence.

In reversing the judgment for the plaintiff against both defendants the Court of Appeals of Kentucky said: "The question is presented whether the casting of the rock was through actionable negligence; and that would seem to rest upon whether the throwing of the stone and an injury should have been reasonably anticipated or foreseen as a natural and probable consequence." The opinion also contains this language: "There was no evi-

dence other than the plaintiff's supporting her claim of rapidity of operation of the two machines. The full recitation of her evidence we believe demonstrates that her testimony as to the speed of the cars was but a hazardous guess, for under the circumstances she could not have possibly known anything about it. The evidence was insufficient to take the case to the jury upon that point, which was essential to the maintenance of the cause of action. We are of the opinion, therefore, that the court should have directed a verdict for the defendants."

In each of the four above cited cases the court held that, in the absence of unreasonable or excessive speed of the vehicle which hurled the stone that caused the injury and because an injury could not have been reasonably foreseen or anticipated by an ordinarily prudent person from its operation in a lawful manner, the driver of the vehicle was not guilty of actionable negligence.

In 25 Am. Jur., Highways, Section 238, the text contains this language: "Liability on the part of one who operates a vehicle upon a highway, for injuries resulting from the casting or precipitation of stones or other objects from the surface of a highway by such vehicle, or by the casting of wheels or other detached portions thereof, may be predicated upon the fact that such injury was proximately due to the operation of such vehicle in a negligent or unlawful manner. Conversely, there is no liability on the part of such operator for injuries so caused while the vehicle is being operated in a lawful manner."

In Section 240 of the same volume and title these statements appear:

"To impose liability for negligence or wrongful act in the use of a highway, it must appear that it was the proximate cause of the injury alleged to have resulted therefrom. The accident must be the natural and probable consequence of the negligence, and one which might have been foreseen by a man of ordinary intelligence

and prudence, although not necessarily in the precise form in which it occurred. * * * .

"While it has been held in a number of cases that injuries occasioned by a vehicle's throwing a stone or other object, either from the highway or directly from the vehicle, might be attributed to negligence of the driver of the vehicle or of some person connected with its operation, in other cases involving injuries of that sort the evidence has been held insufficient to show that there was under the circumstances such negligence, or at least that it proximately caused the injury, the cases turning largely upon the question whether or not such an injury should have been foreseen or anticipated." See Annotation II, 115 A.L.R. pp. 1503, 1504.

As already indicated each of the trucks involved in this unfortunate and unusual accident was operated at a reasonable speed and the rate at which each was traveling was less than the speed limit imposed by law. Each truck was also in its proper place on the highway and each driver had the right to use the highway in the operation of his truck. Neither driver was negligent unless the operation of his truck by the defendant with the rock wedged in its left rear dual wheel constituted negligence on his part. The undisputed evidence indicates clearly that the defendant, as a person of ordinary prudence, even if he knew or should have known that a stone was wedged between the tires and the rims of the left rear dual wheel of his truck, could not have foreseen or anticipated that an injury to persons or property on or near the highway might or would result from the operation of the truck in the manner in which he operated it in the attending circumstances shown by the evidence.

This Court has held in several recent cases that negligence to be actionable must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury. *Puffer* v. *The Hub Cigar Store, Inc.*, 140 W. Va. 327, 84 S. E. 2d 145; *Hartley* v. *Crede*, 140 W. Va. 133, 82 S. E. 2d 672;

*Matthews* v. *Cumberland and Allegheny Gas Company,* 138 W. Va. 639, 77 S. E. 2d 180; *State ex rel. Cox* v. *Sims,* 138 W. Va. 482, 77 S. E. 2d 151; *Donald* v. *Long Branch Coal Company,* 86 W. Va. 249, 103 S. E. 55. See also *Reece* v. *Hall,* 142 W. Va. 365, 95 S. E. 2d 648; *Keller* v. *Wonn,* 140 W. Va. 860, 87 S. E. 2d 453; *Wilson* v. *Edwards,* 138 W. Va. 613, 77 S. E. 2d 164.

To warrant a finding that negligence is the proximate cause of an injury it must appear that the injury was the natural and probable consequence of the negligent act and that it ought to have been foreseen in the light of the attending circumstances. *Puffer* v. *The Hub Cigar Store, Inc.,* 140 W. Va. 327, 84 S. E. 2d 145; *Hartley* v. *Crede,* 140 W. Va. 133, 82 S. E. 2d 672; *Wickline* v. *Monongahela Power Company,* 139 W. Va. 732, 81 S. E. 2d 326; *Roush* v. *Johnson,* 139 W. Va. 607, 80 S. E. 2d 857; *Stenger* v. *Hope Natural Gas Company,* 139 W. Va. 549, 80 S. E. 2d 889; *Matthews* v. *Cumberland and Allegheny Gas Company,* 138 W. Va. 639, 77 S. E. 2d 180; *State ex rel. Cox* v. *Sims,* 138 W. Va. 482, 77 S. E. 2d 151; 13 Michie's Jurisprudence, Negligence, Section 22. One requisite of proximate cause is an act or an omission which a person of ordinary prudence could reasonably foresee might naturally or probably produce an injury, and the other requisite is that such act or omission did produce the injury. *Matthews* v. *Cumberland and Allegheny Gas Company,* 138 W. Va. 639, 77 S. E. 2d 180; *State ex rel. Cox* v. *Sims,* 138 W. Va. 482, 77 S. E. 2d 151.

*In Puffer* v. *The Hub Cigar Store, Inc.,* 140 W. Va. 327, 84 S. E. 2d 145, this Court quoted with approval this passage from the opinion in *Osborne* v. *Atlantic Ice and Coal Company,* 207 N. C. 545, 177 S. E. 796: "Foreseeable injury is a requisite of proximate cause, and proximate cause is a requisite for actionable negligence, and actionable negligence is a requisite for recovery in an action for personal injury negligently inflicted." See also *Matthews* v. *Cumberland and Allegheny Gas Company,* 138 W. Va. 639, 77 S. E. 2d 180; *Wilson* v. *Edwards,* 138 W. Va. 613, 77 S. E. 2d 164.

In this case the negligence of the defendant is the basis of the plaintiff's claim. The burden rests upon the plaintiff to establish primary negligence of the defendant which was the proximate cause of the injury for which the plaintiff seeks a recovery. If the evidence does not establish a situation or a condition from which the jury could reasonably find that the defendant was guilty of negligence which was the proximate cause of the injury sustained by the plaintiff, the plaintiff can not recover. The defendant was not an insurer of the safety of the plaintiff, and the doctrine of res ipsa loquitur does not apply to the facts of this case. The undisputed evidence does not establish negligence of the defendant which was the proximate cause of the injury to the plaintiff. For that reason the circuit court should have sustained the motion of the defendant to set aside the verdict and grant him a new trial; and its refusal to do so constituted reversible error. "Where in a trial of an action at law before a jury, the verdict returned is without evidence to support it, or is plainly wrong, it will be set aside by this Court, the judgment entered thereon reversed, and the case remanded for a new trial." Syllabus, *DeLuz* v. *Board,* 135 W. Va. 806, 65 S. E. 2d 201; point 4, syllabus, *Keller* v. *Wonn,* 140 W. Va. 860, 87 S. E. 2d 453; point 8, syllabus, *Puffer* v. *The Hub Cigar Store, Inc.,* 140 W. Va. 327, 84 S. E. 2d 145; point 9, syllabus, *Hartley* v. *Crede,* 140 W. Va. 133, 82 S. E. 2d 672; point 1, syllabus, *Wickline* v. *Monongahela Power Company,* 139 W. Va. 732, 81 S. E. 2d 326.

The judgment of the Circuit Court of Barbour County is reversed, the verdict is set aside and this case is remanded to that court for a new trial which is here awarded the defendant.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*